MOORE *v.* ROYAL OAK LUMBER & SUPPLY CO.

1. APPEAL AND ERROR — EXCEPTIONS TO FINDINGS OF LOWER COURT—TRIAL WITHOUT JURY—PRACTICE.

In a case tried by the court without a jury, an opinion of the court filed, but not excepted to, as required in the case of findings of fact or law, plaintiff having failed to request findings, is not reviewable on error.

2. SAME—NEW TRIAL—MOTIONS.

Denial of plaintiff's motion for a new trial, though duly followed by exception, does not perform the office of supplying exceptions omitted upon the trial.

3. CORPORATIONS—STOCK—LIEN BY DEBT OF STOCKHOLDER—SALES —WAIVER.

The secretary of a lumber company, having no authority to waive the lien of the corporation upon stock the owner of which was indebted to such corporation, did not waive the lien of the company by failing to claim a lien of that nature when a stock certificate was presented to him by the purchaser for transfer on the books, or by waiting until the transferee had paid out funds in reliance upon the alleged assurance or promise of the secretary to transfer the certificate, where the purchaser or transferee had notice of the indebtedness due from the original holder to the corporation.

4. SAME—FORECLOSURE OF LIEN.

A corporation may refuse to transfer stock upon which it claims a lien for a debt of the transferer without being required to foreclose its lien, as a condition precedent.

MOORE, C. J., and BROOKE, J., dissenting.

Error to Oakland; Murphy, J., presiding. Submitted January 17, 1912. (Docket No. 87.) Decided July 22, 1912.

Assumpsit by Andrew L. Moore against the Royal Oak Lumber & Supply Company for the conversion of certain shares of stock. Judgment for defendant. Plaintiff brings error. Affirmed.

*Andrew L. Moore*, in *pro. per.*

*Patterson & Patterson*, for appellee.

OSTRANDER, J.   In this suit, the plaintiff is not asking that the defendant be compelled to transfer to him upon its books shares of defendant's capital stock.   He sues for money, declaring upon the common counts in assumpsit, and also upon the following special count:

"For that whereas, heretofore, to wit, on the 6th day of December, 1910, the said plaintiff was the owner of certificate No. 22 of the common capital stock of the said Royal Oak Lumber & Supply Company for forty (40) shares, at the par value of ten ($10.00) dollars each, originally issued to H. R. Bachert, and by the said H. R. Bachert transferred and assigned, sold and delivered to the said plaintiff herein for the valuable consideration, to wit, the sum of six hundred ($600.00) dollars.   That on, to wit, the 6th day of December, 1910, the said plaintiff herein mailed said certificate to the said Royal Oak Lumber & Supply Company, accompanied with a request to transfer said certificate to said plaintiff, subject to the by-laws of said corporation.   That said defendant company, upon receipt of said certificate, in conformity with the provisions of the by-laws of said company, issued a notice to the stockholders thereof on the 2d day of January, 1911, of the intended sale and transfer of said stock from said Bachert to said plaintiff.   That on the 9th day of January, 1911, said defendant company notified said H. R. Bachert that his stock had been purchased by one of the stockholders of the company, Mr. Robert Barkley, and that he would settle with said Bachert for said stock. That subsequent thereto, said defendant company notified said plaintiff that they refused to recognize any interest which said plaintiff had in said stock in any manner whatsoever, and claimed to have a lien thereon for an indebtedness alleged to be due said company from said H. R. Bachert.   The plaintiff avers that by the provisions of the by-laws of said defendant company in force on the 6th day of December, 1910, to and including the 10th day of January, 1911, the board of directors of said defendant company had the first option to purchase said stock at a price equal to that paid therefor by said plaintiff. That when the option to purchase said stock was

exercised by the stockholders or stockholder of said defendant company, the proceeds from the sale of said stock to said stockholders or stockholder belonged to this plaintiff, and that upon the delivery of said stock by said defendant company to said stockholders or stockholder, the said defendant company then and there became and was indebted to this plaintiff in the sum which he originally paid for said stock, to wit, the sum of six hundred ($600.00) dollars."

The judge before whom the cause was tried, without a jury, filed an opinion, but filed no finding of facts and law. It does not appear that he was requested to make findings. It does not appear that exceptions were taken to such conclusions, as from the opinion appear to have been reached. Various errors are assigned by the plaintiff, but one of which—the last—which refers to the refusal of a new trial, appears to be based upon an exception. If there are others, they are not pointed out either by the record or by the brief. A motion for a new trial does not perform the office of supplying exceptions not taken at the trial. It has been repeatedly held that, where no request is made for a finding either of law or facts as required by the rule, and the trial judge does not make any such finding, there is nothing for this court to review. *Child* v. *City of Jackson*, 93 Mich. 503 (53 N. W. 629); *Haines* v. *Saviers*, 93 Mich. 440 (53 N. W. 531); *Rice* v. *City of Muskegon*, 150 Mich. 679 (114 N. W. 661). In the last-mentioned case, it is said:

" Even if the opinion of the court could possibly be treated as findings, as there are no exceptions to such findings, this case must be affirmed unless there was reversible error on the trial or unless there is a total want of evidence to support the judgment."

Upon the subject of the practice to be pursued in such cases, see *Griffin* v. *Johnson*, 37 Mich. 87; *Plumer* v. *Abbey*, 39 Mich. 167; *Cumming Township* v. *Schick*, 94 Mich. 222 (54 N. W. 40); *Wertin* v. *Crocker*, 47 Mich. 642 (6 N. W. 683); *Keystone Lumber, etc., Co.* v. *Jenkinson*, 69 Mich. 220 (37 N. W. 198); *Irwin* v. *Schlief*,

48 Mich. 237 (12 N. W. 220); *Butts* v. *Davis*, 50 Mich.
310 (15 N. W. 486); *Gemberling* v. *Lazarus*, 100 Mich.
324 (58 N. W. 1005); *Daniels* v. *Crane*, 141 Mich. 499
(104 N. W. 736); *Dodge* v. *Kennedy*, 93 Mich. 547 (53
N. W. 795); *Crusoe Bros. Co.* v. *Kudner*, 136 Mich.
583 (99 N. W. 788); *Employers', etc., Corporation* v.
*Bridge Co.*, 139 Mich. 351 (102 N. W. 975); *McDonell*
v. *Union Trust Co.*, 139 Mich. 386 (102 N. W. 953);
*Markey* v. *Insurance Co.*, 164 Mich. 350 (129 N. W.
694).   These are but a few of the many decisions denying
to plaintiff a review of the proceedings below in the case
at bar.   This court sits, not to try suits *de novo*, but as a
court for the correction of errors.

Neither in the brief nor at the hearing did counsel for
appellee criticise the practice which has been followed,
but that fact is immaterial.   The appellant, under the
rules, is not entitled to a review, and, if the silence of
opposing counsel was permitted to secure him such a
right, the rules of the court would be of little account.
Since the hearing and since the condition of the record
was discovered, it appears that counsel for both parties
have been advised thereof.   In reply, a stipulation has
been forwarded to the clerk, signed by counsel for the re-
spective parties, which amounts in substance to an agree-
ment on the part of counsel to waive exceptions, and con-
tains the statement that counsel have considered and
treated the short opinion filed by the trial judge as find-
ings of fact and of law.   If this practice may be pursued
in one case, it is only fair that it be adopted in all cases.
If it is discovered in this court—it may, of course, happen
that it is not discovered—that an assignment of error is
not based upon an exception, counsel should in all cases,
if in any, be notified, and, if opposing counsel are agree-
able, we should permit the record to be supplemented by
a stipulation that the failure to except was an inadvertence
and that the cause may be considered in this court as if
the required exception had been taken.   But, if opposing
counsel object, what then shall be done?   Manifestly the

court, if it follows its own innumerable precedents, must decline to consider the cause.

I have not supposed that appellate courts, at least, enforced or declined to enforce rules of practice as counsel did or did not object to their infraction. It is evident that infractions, when discovered, should not be passed over in one case and made the ground of decision in another. In numerous cases it will be found that assignments of error relied upon by the appellant, and debated by the appellee, are dismissed from consideration because not specific, or are insufficient for some other reason based upon the rules. In other cases, like the present one, the judgment has been affirmed without notifying counsel and without permitting them to arrange with opposing counsel to waive the irregularity. I am not now advocating a particular rule of practice, but insisting that, at least until by general rule the practice heretofore followed is changed, it should continue to be followed. I think the appellant has presented no case for review, for which reason the judgment below should be affirmed. But the members of the court are not all agreed upon this proposition, for which reason, as I cannot concur in the opinion of Mr. Justice MOORE, I state my reasons for thinking that, upon the merits, the judgment below must be sustained.

It is undisputed that plaintiff took the certificate of stock from the registered holder and owner as upon a sale and purchase of said owner's interest; the transfer being evidenced by a written assignment dated December 6, 1910. The par value of the shares (40) was $400. When the assignment was made, the defendant company had a lien upon the vendor's stock, amounting to more than the par value thereof, on account of the vendor's indebtedness to the company. Plaintiff made no inquiry of defendant before purchasing the stock. The lien of the corporation upon the stock of its members for all debts due from them to the corporation is created by general law, of which all persons are bound to take notice. Let it be assumed—I

shall hereafter point out why the assumption is not warranted, but let it be assumed—that, when plaintiff bought the stock, he had no notice that his vendor was indebted to defendant. Having thus acquired an interest of little, if of any, value, it is proposed, by judicial aid, to release the lien of the corporation and to compel it to acquire the stock, not at its par or at its real value, but for the sum of $600, which sum it is contended it ought to be required to pay to the plaintiff. The right to such a recovery must be based upon the theory that defendant has, in law, converted the stock or deprived plaintiff of its beneficial use and value, and should therefore pay him its value; that its value is $600.

Plaintiff delivered the certificate of stock to defendant with a request that it be transferred to him on the books of the company. The certificate came in this way into the possession of the company. The letter inclosing the stock is set out in the opinion of Mr. Justice MOORE, and is dated December 6, 1910. Later, under date January 18, 1911, the defendant wrote to plaintiff a letter, also set out in that opinion, saying, in substance, that it had been advised that plaintiff was not entitled to a transfer of the stock for the reason that his vendor was indebted to the defendant, which indebtedness was a lien upon the stock, adding:

"We therefore respectfully decline to recognize any interest you may have in the stock, at least until the indebtedness held by this company against Bachert is paid and satisfied."

To this, plaintiff, on the next day, replied, and this reply, which is not set out in the opinion of Mr. Justice MOORE, contains the following:

"There is no provision in the law by which you can prevent the sale of Mr. Bachert's stock or any other stockholder's simply because they are indebted to your company. Your circular letter of Jan. 2d recognized Mr. Bachert's right to sell his stock, and so does your letter of Jan. 9th. I don't feel like spending a lot of time writing letters about

the matter, and I am not looking for any litigation over it, but I have paid my good money for this stock and I propose to have either the stock or the money. You have no legal right to take my property to pay some other man's debts with, and when Bachert assigned the certificate in question to me, I thereupon acquired all of the interest which he had in that certificate, and I am entitled either to the stock or the money, and you have no legal right to sell it under the by-laws for less than $1.50, which I paid for it.

"If the matter is not adjusted at once, I shall bring suit for the same in the circuit court of this county, and we will find out whether you can take my property to pay some one else's obligations with."

This, the last letter of the correspondence, indicates plaintiff's views of his rights and is clearly a denial of any right of defendant to assert a lien against the stock after it passed into plaintiff's hands. The two letters last above referred to announce the real positions of the parties before this suit was brought.

I assume that, if nothing more appeared than the facts above referred to, no conversion of the stock would be made out. And I assume, also, that this assertion of a lien cannot be construed to be evidence of a waiver of the lien. Plaintiff's right to recover must rest upon some other action of defendant or upon some failure to act between the time when plaintiff asked for a transfer of the stock and the time when a transfer was refused, unless the lien was discharged. When plaintiff acquired the stock, it was subject to defendant's lien. Defendant, before suit was brought, recognized his interest, subject to the lien.

In his opinion, Mr. Justice MOORE finds that the lien of defendant was waived *after plaintiff acquired the stock*. The facts relied upon to support his conclusion are, first, that the by-laws of defendant authorized the secretary of the defendant, upon the proper order of the owner of shares, to transfer the stock upon conditions. One express condition of the by-law is that the right of transfer is subject to the provisions of the statute under

which the company is organized.   He says that the
statute and by-law should be construed together and har-
monized, if possible, and, if harmonized—

"It is apparent that, when a stockholder has notified
the secretary that he intends to sell his stock, the com-
pany, if it intends to assert a lien against it, should at
once say so."

This conclusion may seem harmonious to the plaintiff
and very discordant to defendant.

It may be asked here what difference it made to the
plaintiff whether the defendant's secretary at once asserted
a lien or did so after some days' delay.   Bachert, who
sold the stock to plaintiff, did not, before sale, notify de-
fendant or its secretary of an intention to sell.   The sale
was accomplished before defendant had any knowledge
or notice thereof.   Bachert had no valuable interest in the
stock after the sale, and apparently he had none before
the sale.   Plaintiff lost nothing by the delay of the secre-
tary.   What plaintiff bought is worth as much today as
it was when he bought it.   But it is said that the secre-
tary of defendant sent out to shareholders the notice pro-
vided for in the by-laws in cases where a shareholder de-
sires to sell his stock, and that finally it was asserted by
him, to Bachert, that the stock had been purchased by
another shareholder who would settle with him.   In this
action, contrasted with the asserted duty of the secretary
to at once claim a lien, is found evidence that defendant
had waived its lien; rather that the secretary had waived
it for defendant.   I do not regard this action as neces-
sarily inconsistent with the retention of the lien, assum-
ing that the secretary had authority to waive, or to assert,
statutory liens at his pleasure.   See *Bishop* v. *Globe Co.*,
135 Mass. 132.   It turns out that defendant did not sell
the stock and did not mean by its action to waive, but to
secure, satisfaction of its lien.   The trial judge found,
and there is evidence tending to support the finding:

"It does not seem to me that this method indicated any

waiver of the defendant's rights, but rather disclosed a somewhat devious course of pursuing them."

Treated as a finding of fact, this is conclusive.

Without desiring to enter at length upon the subject of the apparent authority of the secretary to waive defendant's lien by any action less than actually transferring the stock, it is proper to state that I have found no authority which I think supports the conclusion that his apparent authority extended so far as to permit him, by any other action, to waive the lien. It is said, in *Oakland County Sav. Bank* v. *State Bank*, 113 Mich. 284, 286 (71 N. W. 453, 67 Am. St. Rep. 463):

"Undoubtedly, as to one having knowledge of the fact of an indebtedness owing by the owner of the stock to the bank, the cashier would be without authority to waive the bank's lien."

So here, if plaintiff had known of the lien of defendant before he purchased the stock, he could not have relied upon an express waiver thereof by the secretary, because the secretary had no apparent authority to make such a waiver.

In *Citizens' State Bank* v. *Kalamazoo County Bank*, 111 Mich. 313 (69 N. W. 663), it appeared that a by-law of the defendant bank provided that any stockholder, desiring to sell his shares, should notify the president or cashier of the fact, giving him and the board of directors 10 days in which to purchase them; "at the expiration of said 10 days' time, the stockholder may then sell at pleasure." It was insisted that this was a waiver of the statutory lien, and the contention was refused. And it must be kept in mind that the power of the secretary to transfer the shares is not the power claimed to have been exercised by him. The governing rule is well stated in *New York, etc., R. Co.* v. *Schuyler*, 34 N. Y. 73, as follows:

"Where the principal has clothed his agent with power to do an act upon the existence of some extrinsic fact necessarily and peculiarly within the knowledge of the agent,

and of the existence of which the act of executing the power is itself a representation, a third person dealing with such agent in entire good faith pursuant to the apparent power, may rely upon the representation."

It is cited with approval in *Union Trust Co. v. Preston Nat. Bank*, 136 Mich. 460, 475 (99 N. W. 399, 112 Am. St. Rep. 370, 4 Am. & Eng. Ann. Cas. 347). It is the rule which is in fact applied in *Oakland County Sav. Bank v. State Bank, supra.*

It is said, finally, that the secretary of defendant told the plaintiff one day that the transfer would be made, and that, acting upon the assurance, plaintiff paid out considerable sums of money which he would not otherwise have paid. Upon this point the record discloses the following facts: Some days after plaintiff sent the certificate of stock and the assignment to the secretary of defendant, by mail, and before he had received a reply, he saw the secretary on the street, and said to him, "What about the transfer of that stock; when will that stock be transferred?" or words to that effect, and received the reply, in substance, that he (the secretary) had been busy but would take care of it in a few days and send it up. This is the testimony of the plaintiff. He further testified that afterwards, and before notice of the assertion of the lien, he paid certain claims, a part of those considered when he acquired the stock. From his testimony it further appears that, during the summer of 1910, Henry Bachert, a contractor and builder, agreed with plaintiff to construct for him two houses for an agreed price. While the work was in progress, it was discovered that the contractor was losing money, and that the contract price unpaid would not settle outstanding bills and complete the structures. It was estimated then that the deficit would be about $800. It was then agreed that if Bachert would give the stock in question to plaintiff, plaintiff would assume and pay outstanding obligations. About the 1st of December it was learned that the deficit would be approximately $1,200.

"I said to him that, if he would turn in the stock, I would accept it as one-half of the loss, and pay the rest of the bills."

On the date the stock was transferred, plaintiff paid bills amounting, as I understand the record, to $733.51, and did not pay the remainder of the bills until December 17, 1910.

On cross-examination he gave testimony as follows:

"*Q.* Now, as far as the amount you paid on these claims, you would have to pay for them anyway, wouldn't you?

"*A.* No, the lien, time for the lien on some of the claims, I don't know how much, had expired, Mr. Patterson, and some of them still within the provisions of the lien law.

"*Q.* What items that was a lien and could be collected had expired?

"*A.* Well, sir, I couldn't tell you that now, Mr. Patterson. Mr. Gaukler had availed himself of a lien at that time, and Mr. Gaukler's claims I presume still stands unsettled pending the determination of this case, that is true also of Mr. Sibley's case and one other claim, the name I do not just recall at present, then time for a lien has expired and long since expired. I think Mr. Gaukler's claim had expired, but I cannot say for that, his claim aggregated about—"

Bachert, sworn for plaintiff, testified on cross-examination that the buildings cost $1,200 more than they were estimated to cost.

"*Q.* Now, how did you come to say anything to Mr. Moore about this stock in the Royal Oak Lumber & Supply Company?

"*A.* Well, I don't know as I could tell you how it did come up. He knew I had some stock. I don't know as I told him at that time that I was owing the Royal Oak Lumber & Supply Company. I told him some time during the transaction. I don't just remember when.

"*Q.* How much did you tell him you owed the Royal Oak Lumber & Supply Company?

"*A.* If I told him at all, somewhere about that amount. I remember that I did tell him at some time. I presume it was somewhere about the time I was talking about

transferring the stock. I don't know as I spoke of the note. I had no talk with him about when the indebtedness was due. He asked me nothing about it."

I do not find this testimony disputed. In the face of this testimony, how can it be said, as a matter of fact, that plaintiff, relying upon the casual statement of defendant's secretary, paid out money which otherwise he would not have paid? The conclusion involves a finding of fact about which the testimony is not undisputed. The trial judge found that the lien was not waived. Presumably the conclusion was reached after consideration of all of the testimony.

So far I have proceeded upon the assumption, heretofore stated, that plaintiff had no knowledge or notice of the indebtedness of his vendor to defendant. With that assumption, I think no waiver of the lien is made out. The testimony of the vendor, above quoted, excludes the assumption. The assumption can no longer be employed without finding that, notwithstanding this testimony, plaintiff did not know of the indebtedness. The trial judge did not specifically find the good faith of plaintiff and was not requested to do so. The trial court reached a conclusion which it was bound to reach, upon all of the testimony, if plaintiff had the knowledge which this testimony imputed to him. There ought to be no confusion of ideas upon this point, and there is no confusion in the authorities. If plaintiff was informed before or at the time he took the stock that his vendor was indebted to the defendant, no act and no failure to act on the part of the secretary of defendant would, without acquiescence on its part, estop defendant to assert its lien. The express agreement of the secretary would not estop it, nor would the transfer of the stock. If plaintiff had inquired of the secretary before buying the stock, had been told that there was no indebtedness, and had then purchased, the defendant would be estopped because the answer to the inquiry was one which the secretary had apparent authority to make, and therefore one might rely upon his answer. If

plaintiff had no knowledge of the indebtedness, and had secured a transfer of the stock, defendant would be estopped, because the secretary had apparent authority to make the transfer, and in the act of making it would represent that no lien existed. In this case no inquiry was made; the stock has not been transferred; a lien is asserted. There is testimony tending to prove that plaintiff was informed about the indebtedness of his vendor to defendant.

Something appears to be claimed for the fact that the defendant has not foreclosed its lien. I do not think it is under any obligation to do so. I take it that any such corporation may refuse to transfer stock, claiming a lien thereon, without being under necessity to foreclose its lien.

In my view of the case, the judgment below should be affirmed.

STEERE, MCALVAY, BLAIR, and STONE, JJ., concurred with OSTRANDER, J.

MOORE, C. J. The plaintiff sued to recover the value of certain stock. The case was tried before a judge without a jury. He rendered judgment in favor of defendant. A motion was made for a new trial which was overruled. The case was brought here by writ of error.

The Royal Oak Lumber & Supply Company is a corporation organized under the laws of this State. Henry Bachert was one of the original stockholders of the company; 40 shares of the capital stock of the company, at $10 per share, were issued to him. It was fully paid. During the summer of 1910, Mr. Bachert made a contract with plaintiff to construct two houses at an agreed price. When the work was partially completed, it was found the contractor was losing money, and the balance due on the contract would not be sufficient to pay the outstanding bills and complete the job. Plaintiff agreed with the contractor, that, if he would transfer to plaintiff the 40 shares of stock in defendant company, plaintiff would pay the

outstanding bills.   At the time the stock was transferred, it was found the outstanding bills amounted to over $1,200.

On the 6th day of December, 1910, the 40 shares of stock were assigned to the plaintiff and delivered to plaintiff.   Upon receipt of the stock December 6, 1910, plaintiff forwarded the stock by mail to the defendant company, and the following correspondence occurred:

> "Pontiac, Mich., Dec. 6th, 1910.
> "Royal Oak Lumber & Supply Co.,
> "Royal Oak, Mich.
> "*Dear Sirs:*
> "Inclosed find certificate No. 22 of the capital stock of the Royal Oak Lumber & Supply Company, for 40 shares, issued to H. R. Bachert, and by Mr. Bachert transferred to me.   The consideration for this transfer is better than $1.50 per share, and I assume that none of the owners of common stock will care to avail themselves of the option to purchase any portion of the stock at that price.   If they do, I will be glad to let it go.   I speak of this because I think your by-laws provide that when stock is sold, the other stockholders shall have the option to take their *pro rata* share of it if they desire.   Please transfer the stock to my name, and reissue same, mailing to me at Pontiac, Michigan.
> "Will you kindly advise what the status of the company is, whether they expect to pay a dividend this January, and is there any market for the stock?
> "Yours very respectfully,
> "A. L. Moore."

The certificate of stock inclosed with this letter bore on the back the following assignment:

> "For value received, I hereby sell, assign and transfer to Andrew L. Moore, 40 shares of capital stock represented by this certificate, and do hereby irrevocably constitute and appoint the secretary of said company to transfer said stock on the books of the within named corporation, with full power and substitution in the premises.
> "Dated, December 6, 1910.
> [Signed]          "H. R. Bachert,
> "In the presence of A. L. Moore."

The reply was as follows:

"ROYAL OAK, December 8th, 1910.
"Mr. A. L. MOORE,
      "Pontiac, Mich.
"*Dear Sir:*
  "Yours of the 6th inclosing the H. R. Bachert certificate received.  Please advise us what you mean by the consideration being better than $1.50 per share.  As we understand it you are taking the stock at the rate of $11.50 per share.  Please advise us if we are correct.
                  "Yours truly,
              "ROYAL OAK LUMBER & SUPPLY CO.,
                                    "Treas."

                  "PONTIAC, MICH., Dec. 9th, '10.
"ROYAL OAK LUMBER & SUPPLY CO.,
                  "Royal Oak, Mich.
"*Dear Sirs:*
  "Replying to yours of the 8th, we beg to advise you that we are paying $1.50 on the dollar for the stock.  In other words, the $400 of stock cost us $600.  It may not be worth it, but that is what I have in it.  In fact, more than that.  If you can place it somewhere for par, I will let it go.
                  "Yours very respectfully,
                          "A. L. MOORE."

  Mr. Moore testified:

  "On the date that the stock was transferred I paid approximately one-half of the outstanding obligations against the job at that time, amounting to $569.51, to A. A. Corwin & Son, and $164 to Hazelton & Detwiler, but the remaining of the outstanding obligations were not paid at that time.  About the 12th or 15th of December, while on my way from Rochester to the city of Pontiac, I stopped at Royal Oak to see what had been done with the stock, and whether it had been transferred.  I called at the office and there seemed to be no one there but the clerk of the company, and I inquired for Mr. Merritt, and they said he wasn't there, and I came over to the station to take the car, and when I got on the front end of the car Mr. Merritt got off from the car, and I said to him, ' What about the transfer of that stock; when will that stock be transferred?' or words to that effect, and his reply in substance was that he had been busy, but that he would take care of it in a few days and send it up.  Following that, on the 17th of December, I paid the balance of the outstanding

claims with two or three exceptions; Mr. Burlingham, $100; A. A. Corwin & Son $700; Mr. Burlingham, $36.53."

The following letters were received by Mr. Bachert:

"Royal Oak, Mich., Jan. 2, 1911.
"You are hereby notified that 40 shares in Royal Oak Lumber & Supply Company, held by H. R. Bachert, are for sale to A. L. Moore, at $1.50.   52 shares of Thos. Bell's stock to J. A. Merritt, at par.
[Signed]        "J. A. Merritt, Secretary."

As to this notice Mr. Merritt testified:

"It is the notice that was sent out to the stockholders in accordance with our by-laws, January 2d, by me as secretary."

"January 9, 1911.
"Mr. H. R. Bachert,
        "Pontiac, Michigan.'
"Dear Sir:
"Your stock was purchased by a stockholder in the company, Mr. Robert Barkley.   He will settle with you for the same.
        "Yours truly,
                "J. A. Merritt, Secretary,
                        "Per A. G."

As to this letter Mr. Merritt testified in July, 1911, on direct examination:

"Letter of January 9th is the letter that was sent to Mr. Bachert stating that Barkley had purchased his stock.
"Q. What is the fact as to whether Mr. Barkley did purchase the stock?
"A. He did not.
"Q. What is the fact as to whether the stock has ever been sold?
"A. No, sir, it has not.   The stock still stands on the books of the company in the name of H. R. Bachert, and we have been holding his certificate abiding the result of this suit.
"Q. Now, the position of your company is that you do not lay any claim to this stock except that you have a lien on it for Mr. Bachert's debt?
"A. Yes, sir.   I think that is all there is to it."

It does not appear that any steps have been taken to foreclose any lien. When Mr. Bachert received the letter of January 9th regarding the stock as belonging to Mr. Moore, he turned the letter over to him. After a telephone talk with Mr. Merritt, Mr. Moore wrote the defendant a letter which contained the following:

"I have your notice of January 2d and also of January 9th with reference to the stock which you mailed to Mr. Bachert, and I beg to advise you that Mr. Robert Barkley will settle with me for the stock and not with Mr. Bachert. I bought Mr. Bachert's interest in the stock, and paid him for it. The stockholders of the Royal Oak Lumber & Supply Company have the option to purchase this stock at the price I paid for it, and if they exercise that option, then the money comes to me, not to Bachert, for he has already had his money once. You having accepted the stock at the price sold, I shall expect the Royal Oak Lumber & Supply Company to favor me with check for $600 by early mail. Please give the matter your early attention."

To which letter Mr. Merritt replied as follows:

"ROYAL OAK, MICH., Jan. 18, '11.

"A. L. MOORE,
        "Pontiac, Mich.
"*Dear Sir:*
"Replying to your letter of Jan. 16th regarding the stock of H. R. Bachert, of the Royal Oak Lumber & Supply Company, would say that we are advised you are not entitled to a transfer of this stock for the reason that H. R. Bachert has been for a long time indebted to the Royal Oak Lumber & Supply Company, and such indebtedness is a lien upon the stock standing in his name, and we therefore respectfully decline to recognize any interest you may have in the stock, at least until the indebtedness held by this company against Bachert is paid and satisfied.
            "Very respectfully yours,
                "J. A. MERRITT, Secretary,
                        "Per A. G. G."

This is the first intimation in the record that defendant claimed a lien. Other correspondence occurred which it is not necessary to incorporate here.

` The defendant is incorporated under Act No. 232, Pub. Acts 1903.  Section 16 of the act reads as follows:

"The stock of every such corporation shall be deemed personal property, and be transferred only on the books of such corporation, in such form and manner as their by-laws shall prescribe, and such corporation shall at all times have a lien upon all the stock or property of its members invested therein, for all debts due from them to such corporation."

Section 24 provides that the company may enforce its lien by giving notice to the stockholder "that unless he shall pay his indebtedness to said corporation within three months from the time of giving such notice, then such corporation will proceed to sell," etc.  Section 25 provides that, after this notice, another notice shall be given in one or more newspapers of the intention of the company to sell and it may sell at public auction.

Defendant's by-law No. 15 reads as follows:

"Sale and Transfer of Stock.  The stock of the corporation shall be deemed personal property, and shall be transferred on the books of the corporation by the secretary upon proper authority conferred upon him by the owners of the respective shares of stock, subject to the provisions of the statute under which this company is organized, and subject to the following conditions: In case any stockholder desires to sell his stock, he shall give the secretary at least five days' notice in writing of his intention to sell the same, to whom, and for what price.  And upon receipt of such notice said board of directors shall thereupon have for the benefit of all other stockholders the first option to purchase the same at the price equal to any such bona fide offer as said stockholders may have for said stock.  The secretary shall immediately notify each stockholder in writing of the receipt of such notice, and each stockholder shall have the right to purchase such a portion of said stock so offered for sale as is represented by the proportion his said stock holdings bear to the total capital stock of said company that is issued.  And in case any stockholder shall not desire to purchase his said portion, then his option to purchase shall revert to all of the remaining stockholders in the same manner.

The foregoing notice and option shall be a condition precedent to the transfer of any stock on the books of the corporation. Stockholders desiring to purchase their proportion of said stock so offered for sale shall avail themselves of the opportunity within five days after the issuance of such notice by the secretary. If the stockholders of said company shall not avail themselves of the opportunity to purchase said stock, then the person so desiring to sell may have his stock transferred to the person from whom he received the bona fide offer."

This case was tried in July, 1911. Up to that time no notice had been served under sections 24 and 25 of Act No. 232, *supra*. It has already appeared by the testimony of Mr. Merritt that, at the time of the trial, the company still held the certificate of stock which was transmitted to it by Mr. Moore December 6, 1910, with an assignment on the back thereof from Mr. Bachert to Mr. Moore, and that the stock still stood in the name of Mr. Bachert upon the books of the company.

It is conceded by the plaintiff that defendant had a lien by virtue of the statute under which it was organized, but claims defendant waived the lien. Defendant insists that Mr. Merritt had no authority to waive the lien. Section 16, *supra*, which we have quoted, gives the defendant power to provide how the stock shall be transferred. That power was exercised by the enactment of by-law 15, which we have quoted, which confers express authority upon the secretary upon proper authority of the owner of the stock to transfer it subject to the conditions there mentioned.

Sections 16, 24, and 25 of Act No. 232, *supra*, and by-law 15, must be read together and harmonized, if possible. If this is done, it is apparent that, when a stockholder has notified the secretary that he intends to sell his stock, the company, if it intends to assert a lien against it, should at once say so. If, instead of doing that, the secretary "immediately notifies each stockholder in writing" of the notice he has received from the selling stockholder, and some other stockholder avails himself of the right to

buy it within five days, it would be unreasonable to say the company had not waived its lien.  Why is it not equally anomalous to say that, after this notice is given by the secretary, and, "if the stockholders of said company shall not avail themselves of the opportunity to purchase said stock, then the person so desiring to sell may have his stock transferred to the person from whom he received the bona fide offer," the lien may still be asserted.  To ask the question is to answer it.

In addition to the above supposed situation, it appears that Mr. Moore was assured by the secretary 8 or 10 days after he had transmitted the stock to him that the transfer would be made, and, acting upon this assurance, paid out very considerable sums of money that he otherwise would not have paid.  We think the defendant is now estopped from asserting a lien.  See *Oakland County Sav. Bank* v. *State Bank*, 113 Mich. 284 (71 N. W. 453, 67 Am. St. Rep. 463).

The judgment should be reversed and a new trial ordered.

BROOKE, J., concurred with MOORE, C. J.