EDGERLY v. LADIES OF THE MODERN MACCABEES.

1. TRIAL—FINDINGS OF FACT—APPEAL AND ERROR.

When causes are tried by the court without a jury and findings are properly requested, it is contemplated by the statute and court rules that the court will find and state ultimate facts material to the issue, and, separately, conclusions of law based thereon; on error the questions usually presented in this court are whether there is testimony supporting the conclusions of fact and whether the facts found sustain the judgment.

2. SAME—QUESTIONS REVIEWABLE.

Findings of fact supported by evidence will not be disturbed: the testimony need not be printed at all unless it is claimed that there is none to support a finding or that the court refused to find an undisputed fact considered to be material.

3. SAME.

In such cases, on appeal, the Supreme Court sits to review errors of law only, and will not find facts or try the cause *de novo.*

4. SAME—INSURANCE—FRATERNAL BENEFIT ASSOCIATIONS.

Where, in an action on a benefit policy, it was claimed that an officer of the society had no authority to issue a dispensation relied on by plaintiff and necessary to plaintiff's case, and the trial court made a finding that defendant conceded the officer's authority to issue the dispensation but the record failed to sustain such finding, the question as to authority being a mixed issue of law and fact, this court will reverse the judgment and order a new trial.

Error to Ingham; Collingwood, J. Submitted January 9, 1913. (Docket No. 40.) Decided April 8, 1913.

Assumpsit by Harry A. Edgerly against the Ladies of the Modern Maccabees on a benefit certificate. Judgment for plaintiff. Defendant brings error. Reversed.

*John B. McIlwain,* for appellant.

*Patrick H. Kelley,* for appellee.

OSTRANDER, J. Plaintiff brought this action upon a life benefit certificate numbered 19,906, issued to Julia E. Edgerly August 24, 1894. A copy of the certificate is attached to the declaration. It recites that Mrs. Edgerly is a member of Central Hive No. 162, located at Lansing, Mich., entitled to all the rights, benefits, and privileges of membership, and at her death to receive one assessment upon the membership, but not to exceed $1,000 as a benefit to a person named in said certificate—

"Provided she shall have in every particular complied with the laws, rules and regulations of the order which are now or may hereafter be in force, and has not suppressed facts in regard to her health, age, habits, physical condition, personal or family history,

or untruthfully answered any question in her application for membership or made any untruthful statements therein as shown by said application, which said application is hereby made a part of this certificate."

Upon the back of the said certificate are printed certain conditions, among them the following:

"It is hereby stipulated and agreed by me that notice of an assessment, when published in the official organ of the order and mailed to my last known place of residence as shown by the records of the order, in compliance with the laws thereof, shall be accepted by me as personal notice of such assessment, and I on my own behalf and on behalf of my beneficiary or beneficiaries hereby expressly waive any claim against the order in case of death or disability arising while in default in making payment of an assessment so published and mailed as provided by the laws, and that any payment of dues or assessments by me or receipt thereof by any officer or member of the subordinate hive to which I belong, shall not be binding on the great hive until received by the great record keeper or great finance keeper. * * *

"It is expressly agreed that no officer or member of any subordinate body or any officer or agent of the great hive, Ladies of the Modern Maccabees, has any authority or right to waive a strict compliance with any of the provisions of the laws of the order relative to the payment of dues or assessments as they may be fixed or called from time to time; and it is expressly agreed that no claim shall be valid against the order under any certificate issued on this application which may arise while I am in default of making payment of any dues, fines, taxes, or assessments in the manner and within the time required by the laws of the order, or the by-laws of the subordinate hive to which I may belong, whether such default comes from my personal neglect or from relying upon any assurances by any officer or agent of this order, or any officer, agent, practice or custom of the subordinate body of which I am or may become a member."

The plea was the general issue, with notice of cer-

tain special defenses. The cause was tried by the court without a jury, and, being requested, written findings were made and filed. The court found:

"Julia Edgerly became a member of the order of the Ladies of the Modern Maccabees by joining a subordinate hive in the city of Lansing on August 24, 1894, and there was issued to her benefit certificate number 19,906. By the terms of this certificate, it was agreed that, if said Julia Edgerly complied with and faithfully fulfilled the laws, rules, and regulations of said order, then, in event of her death, said order should pay to Nora Girardin, her daughter, a sum not exceeding $1,000. Nora Girardin died, and at the death of Julia Edgerly, Harry Edgerly, her son, as her only surviving heir, presented a claim to the great record keeper for the moneys due on this certificate. This claim was referred to the great executive committee of the order and by them rejected. Harry Edgerly brings suit, in this court, against the defendant order.

"The following facts are conceded:

"That Julia Edgerly became and was a member of the order on August 24, 1894. That Julia Edgerly died on December 8, 1910. That plaintiff, Harry Edgerly, succeeded to all the rights and benefits under certificate.

"That Julia Edgerly neglected to pay assessment No. 123 due in August, 1910, and that she neglected to pay assessments Nos. 124, 125, and 126 when they became due and payable in the months of September, October, and November of the same year.

"That on December 7, 1910, Julia Edgerly paid or caused to be paid to the record keeper of the subordinate hive in Lansing the several sums due and unpaid and made application for reinstatement. That at the time these payments were made Julia Edgerly could not furnish a certificate of good health, and shortly thereafter, in less than 30 hours, she died of a disease of which she was at the time of payment suffering.

"On the part of the defendant order it is conceded: That Harry A. Edgerly has at this time a right to commence suit in this court. That during the year of 1910 the order of the Ladies of the Modern Maccabees

was discussing the proposition of raising their rates, and that a large number of members contemplated leaving and many actually did leave the order. That on July 1, 1910, the great commander, by virtue of the power vested in her by the constitution of the order, issued a dispensation. This dispensation was directed to the great record keeper, and instructed that officer to accept the dues of lapsed members and reinstate them up to January 1, 1911, without a certificate of health, as required by the rules of the order. Pursuant to these instructions, the great record keeper notified the record keepers of the subordinate hives, and the communication was given to the members. A communication from the great record keeper concerning the terms and privileges of this dispensation was given to the hive in Lansing of which Julia Edgerly was a member. That on the 1st of November, 1910, the great commander issued a second dispensation in terms annulling the dispensation of July, and requiring that, before the great record keeper received the dues or reinstated any delinquent member, said applicant should furnish a certificate of health.

"Under the rules of the order Julia Edgerly stood suspended on September 1, 1910, for the nonpayment of assessment No. 123. Members of the order some time during July or August received notice that under the terms of the July dispensation lapsed members would be allowed to reinstate at any time before January 1st, on payment of dues and without a certificate of health, as required by the rules of the order.

"Julia Edgerly would have had the right, on payment of dues and without furnishing a certificate of health, to be reinstated at any time before January 1st, if the dispensation of July had not been abrogated. Courts of justice do not regard forfeitures with favor, and they are never enforced, unless the evidence is clear that such was the intention of the parties. *Home Life Ins. Co.* v. *Pierce*, 75 Ill. 426. In a New York case, *Homer* v. *Insurance Co.*, 67 N. Y. 478, prior to the time when payment became due, the president of the company indorsed upon a card, giving notice when payment was due, these words, 'Payment extended until October 10, 1874.' Defendant died September 19, 1874, after payment was due.

Held to continue the policy in full force.   In a California case the court say:

" 'We think these authorities sustain the point that, although the granting of the extension was not a binding contract so as to preclude the appellant from repudiating it at any time by notice to the assured, yet in the absence of any such repudiation, the acts and conduct of the company were such as to amount to a waiver of the provisions for forfeiture in the policy.' *Knarston* v. *Insurance Co.*, 140 Cal. 67 (73 Pac. 740).

"*Viele* v. *Insurance Co.*, 26 Iowa, 9 (96 Am. Dec. 83) ; *Dean* v. *Insurance Co.*, 62 N. Y. 642; *Tennant* v. *Insurance Co.* (C. C.), 31 Fed. 322.

"These questions then arise:   What was the effect of the dispensation of November 1, 1910?   Was notice of repudiation necessary?   Although in life insurance time of payment is material, and cannot be extended against the assent of the company, when such assent is given, the court should be liberal in construing the transaction in favor of avoiding a forfeiture. *Insurance Co.* v. *Norton*, 96 U. S. 234; *Insurance Co.* v. *Eggleston*, 96 U. S. 572; *Insurance Co.* v. *Mowry*, 96 U. S. 544.

"Members who had lapsed, but who were relying on the provisions of the July dispensation regarding the health certificate to become reinstated, were entitled to notice of the repudiation of this provision. There is no proof that notice of any kind was given to any one that a dispensation was to be issued in November, 1910, annulling the provisions of the July dispensation regarding the furnishing of health certificates.   There is no proof that after the great commander issued the November dispensation to the great record keeper any attempt was made to notify any of the active members of the order.   There is no proof that any attempt was made to notify any of the lapsed members of its provisions.   There is no proof that Julia Edgerly had any notice of the November dispensation.

"The record keeper of the subordinate hive in Lansing, of which Julia Edgerly was a member, had notice of the July dispensation.   But it is an undisputed fact that on December 6, 1910, when she received the dues and the request for reinstatement from Julia Edgerly,

she, the record keeper, did not know that the dispensation of November 1st had been issued or that the provisions of the July dispensation, waiving the furnishing of a certificate of health, had been annulled. This is part of the testimony of Mrs. Hodges. Some notice of repudiation should have been given to lapsed members. When an active member and an officer in the subordinate hive had no notice of the repudiation, can this court find as a matter of law that any definite number of days after the November dispensation was issued ought to have been as to lapsed members sufficient notice? It does not seem to this court that such finding would be justified.

"Under the facts and the law, this court finds for the plaintiff Harry A. Edgerly, and directs that a verdict be entered against the defendant, the Ladies of the Modern Maccabees, for the full amount claimed, with interest at 5 per cent. from February 8, 1911, at 5 per cent. and the costs of this court."

Judgment was entered for the plaintiff for the face of the certificate and interest. Defendant's counsel thereupon proposed findings after judgment, as follows:

"(1) That defendant is a fraternal beneficiary association, incorporated and doing business under the provisions of Act 119 of the Public Acts of 1893, as amended [Act No. 160, Pub. Acts 1901]. That its supreme governing and law-making body is made up of representatives from the membership.

"(2) The certificate sued on in this case was issued upon a written application signed by the deceased, Julia Edgerly, dated August 24, 1894, in which it was agreed by the deceased that said application and the laws of the order now in force or thereafter adopted shall form the basis of her contract of beneficial membership, binding upon herself and her beneficiaries.

"(3) That the by-laws of defendant in force during all the time complained of in this case provide that, if a member fails to pay an assessment during the month in which the same is levied, she shall stand suspended from all rights and benefits under the certificate held by her while under suspension. That during the first 30 days after suspension she may become reinstated by

the payment of the assessment and dues then due to the finance keeper of her hive. That is, if she is under suspension for more than 30 days, she must not only pay all dues and assessments, but furnish a certificate of good health to be approved by the great medical examiner, before she can become reinstated. That, if she is under suspension for more than 60 days, she must not only pay the assessments and dues, but pass a satisfactory medical examination to be approved by the great medical examiner before she can become reinstated.

"(4) That assessments 123, 124, 125, and 126 were duly levied, and notice given in accordance with the laws of defendant, and became due and payable from each member during the months of August, September, October, and November, 1910, respectively.

"(5) That on the last day of August, 1910, or near thereto, deceased, Julia Edgerly, called up the finance keeper of her hive in Lansing by telephone, being the person to whom the assessment should be paid, and informed her that she was not going to pay any more assessments but would drop out of the order.

"(6) That Julia Edgerly did not pay assessment 123 during the month of August, and under defendant's laws stood suspended September 1, 1910, from all rights and benefits of the order and she did not pay or offer to pay said assessment or any of the subsequent assessments until December 6, 1910.

"(7) That on December 6, 1910, Julia Edgerly was seriously and fatally ill, and could not furnish a certificate of good health, nor did she pass a medical examination, and died from the illness she was then suffering on December 8, 1910.

"(8) That on December 6, 1910, the daughter-in-law of the deceased, in an effort to reinstate the deceased, called the finance keeper of the hive to which Julia Edgerly belonged, Mrs. Hodges, to the house of Julia Edgerly, and there signed the name of Julia Edgerly to an application for reinstatement, and paid the finance keeper of the local hive certain sums of money sufficient in amount to pay the back dues, assessments, and also an assessment for December, 1910, which money was furnished by Harry Edgerly, the plaintiff, but no certificate of good health was furnished.

"(9) That on the 8th day of December, 1910, the finance keeper again went to the home of Julia Edgerly, and informed the daughter-in-law that it would be necessary to have a certificate of good health of Julia Edgerly before she could become reinstated, and that she would have to forward the certificate to the great medical examiner for approval before any reinstatement could be had. That without any consultation with Julia Edgerly, who died a few hours thereafter, a certificate of health was drawn up showing she was then suffering from certain diseases, and signed by the daughter-in-law, but before the same was received at the headquarters said Julia Edgerly had deceased.

"(10) At neither of the visits of the finance keeper to the home of Julia Edgerly on the 6th or 8th days of December, 1910, did she see the said Julia Edgerly or have any talk with her; the payments of the money and the signing of the papers being all done by the daughter-in-law.

"(11) That after the death of the said Julia Edgerly and the receipt of the money at headquarters $6.20 of the amount paid was returned to the said Harry Edgerly, who received the same, and has ever since retained it, and the balance paid by him was subsequently tendered to him and refused by him, all of which was done before the commencement of this suit.

"(12) Under defendant's laws governing the payment of assessments and reinstatements of suspended members Julia Edgerly could not become reinstated December 6, 1910, without furnishing a certificate of good health, which could not be furnished as she was not then in good health, and which she did not furnish.

"(12½) The laws of defendant provide that said laws can only be amended in the following manner:

"'Sec. 29. Any proposition to amend these laws shall be submitted by a member of the order or a subordinate hive, to the great executive committee or may be proposed by said committee at least ninety days prior to the review of the great hive, and said proposition to amend shall be published in the official organ of the order in one issue thereof sixty days prior to the next review, provided the great hive by unanimous consent may consider any amendment submitted. The great record

keeper shall submit all such propositions to amend the laws
of the order in her report. No amendment shall be adopted
unless it receives a majority of the votes of the members present
voting thereon. All amendments adopted shall go into effect
sixty days after their adoption unless otherwise ordered by the
great hive.'

"(13) Plaintiff's sole claim of right to reinstatement of Julia Edgerly on December 6, 1910, by the
payment of the assessments without a certificate of
good health, is based upon a dispensation issued by
the great commander on July 6, 1910, which read as
follows:

"'OFFICE OF THE GREAT COMMANDER,

"'ST. LOUIS, MICHIGAN, July 6, 1910.

"'To Emma E. Bower, located at Port Huron, State of Michigan—

"'Ladies:

"'Under and by virtue of the authority given me in the laws
of the L. O. T. M. M., and believing that the best interests of the
order will be thereby subserved, I hereby issue to your hive the
following dispensation:

"'Allowing reinstatement without certificates of good health
or re-examination for one hundred and twenty (120) days from
June 1, 1910. You will therefore be governed in accordance
therewith and in relation thereto.

"'Given under my hand and seal of the L. O. T. M. M., this
6th day of July, 1910.

"'FRANCES E. BURNS, Great Commander.

"'EMMA E. BOWER, Great Record Keeper.'

"(14) The only provision in defendant's laws in
force July 6, 1910, authorizing the great commander
to issue any dispensation, is section 41, Laws of 1908,
which reads as follows:

"'Sec. 41. The great commander shall preside at all reviews
of the great hive, and enforce all the laws thereof; she shall
have the general superintendence of the order, with the power
to grant dispensation when the good of the order may require,
except for the admission or retention of unqualified persons to
membership. The application for a dispensation shall be made
on the proper blank, officially signed and sealed, and accompanied by a fee of $1.00, said fee to be placed in the general
fund of the order. Free dispensations may be granted by the
great commander when the purpose is to complete the organ-

ization of new hives and transfer members thereto, or when the necessity therefor was not the fault or neglect of the hive, officer, or member for whose benefit it is issued.'

"(15) The dispensation above referred to was filed in the office of the great record keeper. It was not sent to the hives nor to the members. The great record keeper after the receipt of the dispensation, sent notice to the record keepers of the subordinate hives, which reads as follows:

" 'OFFICIAL.

" 'OFFICE OF THE GREAT RECORD KEEPER,

" 'PORT HURON, MICH., July 20, 1910.

" '*To the Membership:*

" 'The great commander has been requested by the great executive committee to issue a dispensation to allow members suspended over thirty days to reinstate without furnishing a certificate of health, to be in force from June 1st to January 1st, 1911. A member suspended June 1st, has under such dispensation until October 1st, to reinstate without a certificate of health or re-examination. A member suspended on July 1st, has until November 1st to reinstate. A member suspended August 1st, has until December 1st to reinstate. A member suspended September 1st, has until January 1, 1911, to reinstate.

[Signed]     " 'EMMA E. BOWER,

" 'Great Record Keeper.'

"(16) On November 1, 1910, the great record keeper issued another dispensation in terms annulling the dispensation of July 6, 1910, and directed the great record keeper only to receive applications for reinstatement of members under suspension for more than 30 days by complying with the laws and furnishing a certificate of good health in addition to the payment of all assessments and dues. This was also filed in the office of the great record keeper.

"(17) Notice of this dispensation of November 1st was sent to the record keepers of the hives, but it appears the notice was not received by the record keeper of the Lansing hive.

"(18) Under defendant's laws, the local finance keeper has no power of reinstatement of suspended members, but can only accept their application and forward the same to the great record keeper.

"(19) There is no evidence in the case that the deceased, Julia Edgerly, knew of or in any manner re-

lied upon the dispensation of July 6, 1910, in becoming suspended September 1, 1910, òr remaining under suspension. That she had no correspondence with any of the officers of the defendant, or talked with them in regard to her membership. That she had no ·talk with the finance keeper of her hive about becoming reinstated after the last days of August, when she informed the finance keeper she would not pay any more assessments, but would drop out of the order. That during the month of September the deceased, Julia Edgerly, gave as a reason to her daughter-in-law for dropping out of the order that she was aggrieved at the amount defendant society had paid a short time prior thereto on settlement of a certificate held! by her deceased daughter in defendant society. After the talk the last days of August over the phone above referred to, the deceased never thereafter informed the finance keeper that she desired to become reinstated, although both lived during the entire period in the city of Lansing.

"(20) There is no evidence in the case that the deceased was in any manner misled by the dispensation of July 6, 1910, in not paying her assessments within the time as required by the laws of the order.

"Defendant's counsel asks the court to amend a portion of the findings of fact contained in the opinion in the following particulars:

"(21) That part of the opinion which reads: 'On the part of the defendant order it is conceded,' and then follows: 'That on July 1, 1910, the great commander, by virtue of the power vested in her by the constitution of the order, issued a dispensation,' for the reason that defendant has never conceded that the constitution of the order ever empowered the great commander to issue any such dispensation, but, on the contrary, ·has persistently insisted the great commander has no power by dispensation to change the contract between the members in their associated capacity, nor did she attempt to do so by the dispensation issued, but only authorized the great record keeper to accept application for reinstatement of members who might apply, without a certificate of good health

"(22) That part of the opinion which reads, 'pursuant to these instructions, the great record keeper

notified the record keepers of the subordinate hives, and the communication was given to the members,' is misleading. It should be amended so as to state that the communication was read in the hive to the members present, but further than that was not communicated to the members by any of the officers.

"(23) That part of the opinion which reads, 'members of the order some time during July or August, received notice that under the terms of the July dispensation lapsed members would be allowed to reinstate at any time before January 1st, on payment of dues and without a certificate of health, as required by the rules of the order,' should be amended to state that no notice was sent to any of the members by any of the officers, except the notice to the record keepers of the subordinate hives, and that neither the supreme officers nor the local officers sent any notice to the membership.

"(24) That part of the opinion which reads, 'Julia Edgerly would have had the right on payment of the dues and without furnishing a certificate of health to be reinstated at any time before January 1st, if the dispensation of July 1st had not been abrogated,' should be amended so as to strike out the word 'right,' as defendant has insisted that the rights of the members are fixed by her contract with the order, and that the great commander would have no power to change these rights, and that the acceptance of applications for reinstatement in conflict with the contract rights between the members and the society would be a mere indulgence or gratuity, available only to those who applied while the indulgence or gratuity was in force

"(25) That part of the opinion which reads, 'Members who had lapsed, but who were relying upon the provisions of the July dispensation regarding the health certificate to become reinstated, were entitled to notice of the repudiation of this provision,' should be amended in so far as the same may imply that the said Julia Edgerly relied on any such dispensation, as there is no proof in the case that she did rely upon the dispensation, or ever knew of it, but, on the contrary, her reason for becoming suspended, as stated by herself, was that she was aggrieved by the settle-

ment made on the certificate held by her deceased daughter.

"(26) That part of the opinion which reads, 'There is no proof that after the great commander issued the November dispensation to the great record keeper any attempt was made to notify any of the active members of the order,' as the positive testimony of the great commander, Mrs. Burns, is that notice of the November dispensation was sent to all the record keepers, although the testimony of Mrs. Hodges is that it was not received by her, and she did not know that a certificate of good health was necessary.

"(27) That part of the opinion which reads, 'Some notice of repudiation should have been given to lapsed members,' as there were no vested rights created in the members by the dispensation of July 6, 1910, no change in the contract between the members and the society, and at most the dispensation was a mere indulgence or favor authorizing another officer to accept applications of lapsed members for reinstatement, and when withdrawn there was no repudiation of any portion of the contract rights between the deceased and the defendant.

"CONCLUSIONS OF LAW.

"Defendant's counsel asks the court to specifically find on each of the following conclusions of law:

"(28) The articles of incorporation, the application, and the by-laws of defendant, which, together with the certificate, constitute the contract between the member and the defendant society, did not authorize or empower the great commander to set aside the by-laws, and allow the members to become reinstated in conflict with the by-laws. The great commander cannot waive the by-laws relating to the substance of the contract between the members in their associated capacity.

"(29) The deceased, as a member of defendant society, was chargeable with knowledge of the limitations upon the authority of its officers.

"(30) When the deceased lapsed her membership September 1, 1910, she had only the right of reinstatement provided in the laws of the society, and the terms of her contract with the society, and no officer of defendant society had any authority under the laws

to reinstate her except in the manner provided in the laws of the society.

"(31) The dispensation of July 6, 1910, did not change the contract rights between the deceased, Julia Edgerly, and the defendant society, with reference to the payment of assessments and the rights of reinstatement within the time and in the manner provided in its laws. At most, it was but a mere indulgence or gratuity authorizing another officer to accept applications for reinstatement without a certificate of good health, and did not create any vested right in the deceased. The permission could be withdrawn at any time by the same power that gave it in the first instance. Not having created any vested right in the deceased, its withdrawal did not take away any right from the deceased.

"(32) There is no evidence in the case that the deceased was in any manner misled by the dispensation of July 6, 1910, in becoming suspended and remaining under suspension, and the affirmative proof is that she acted on her own judgment in dropping out of the society, and notified the finance keeper in advance of her intention to do so, and subsequently assigned as a reason therefor that she was aggrieved with the settlement made by defendant society on the death of her daughter under the certificate held by her daughter in defendant society.

"(33) Under the facts in this case, the deceased could not become reinstated December 6, 1910, without furnishing a certificate of good health, which she did not do, and at the time of her death was under suspension from September 1, 1910, and judgment should be entered for the defendant of no cause for action."

The ruling was:

"Defendant having filed the several proposed findings of fact after judgment and at a hearing argued the same before the court, the several findings are either refused or given as noted below, the number referring to the number on the paragraph as in the copy filed with the court. These findings which were given in the previously filed opinion of the court are marked as refused.

"(2) Nos. 1 to 15, inclusive, are refused.

"(3)  No. 16 is refused.

"(4)  No. 17 is given.

"(5)  No. 18 is given.

"(6)  Nos. 19 to 25, inclusive, are refused.

"(7)  No. 26 is given and the part of the opinion of this court referred to should be changed by striking out the two last words 'the order,' and adding the words 'the Lansing Hive of which Julia Edgerly was a member.'

"(8)  Nos. 27 to 33, inclusive, are refused."

Some of the findings asked for are included, in substance, in the findings filed.  A comparison will show that the most of them are not.  Exceptions were filed to the refusals to find as requested, error is assigned upon these exceptions, and it is also assigned as error that the court found in favor of plaintiff.

At the beginning of the trial, it was stipulated by counsel, among other things, that the by-laws of defendant for the years 1908 and 1910, as printed, might be used upon the trial by either party without further proof or authentication.  Numerous by-laws appear to have been read, and some of them to have been relied upon by both parties.  Ordinarily we should assume that the trial court intended the finding to be read with them—to incorporate them.  But the court expressly refused, as witness requests numbered 12½ and 14, to incorporate some of them in the finding.

It is expected and contemplated by the statute and the rules of court that when causes are tried by the court without a jury, and findings are properly requested, the court will find and state ultimate facts material to the issue, and, separately, conclusions of law based thereon.  After such a trial and findings, the questions usually presented in this court are whether there is any testimony to support the conclusions of fact, and whether the facts found sustain the judgment rendered.  This court will not, upon disputed testimony, find facts, and will not assume

that any material fact, not found and not admitted upon the trial, is proven.

It will not disturb a finding of fact which is supported by testimony.

Indeed, it is not necessary that the testimony shall be printed unless it is claimed there is none tending to prove a fact found by the court or that the court refused to find an undisputed fact thought to be material. See decisions involving the rules of practice in such cases collected in *Moore* v. *Supply Co.*, 171 Mich. 400 (137 N. W. 270). We have examined the record with the briefs of counsel to see whether sufficient facts are admitted or found to warrant the examination and decision of the legal questions upon which the ruling of the trial court turned. Arguments in the briefs cover a considerable field. The record discloses that it is found that defendant conceded "that on July 1, 1910, the great commander, by virtue of the power vested in her by the constitution of the order, issued a dispensation." If by this is meant that the power of the great commander to make or issue the dispensation is conceded, no support for it can be found in the record.

In the brief for plaintiff it is said:

"It is admitted that were it not for section 98 of the laws of 1910 making general provisions for re-rating, and the dispensation granted by the great commander, under date of July 6, 1910, to be in effect from June 1, 1910, to January 1, 1911, Julia E. Edgerly could not have been reinstated on December 6, 1910, without a certificate of good health, and probably not without a medical re-examination. The exact legal force, therefore, of section 98 of the laws of 1910, and the dispensation bearing date July 6, 1910, becomes the chief question in the case. In this connection it is contended by plaintiff as follows:

"(1) That defendant is estopped from asserting as a defense in this case that the July 6, 1910, dispensation is invalid.

"(2) That the power of the great commander to

issue the July 6th dispensation can be questioned only
in the manner provided in section 41 of the laws of
1910 of defendant order.

"(3) That the July 6, 1910, dispensation expressly
provided that it was to be in effect from June 1, 1910,
to January 1, 1911, and cannot be rescinded on No-
vember 1, 1910, without notice to the membership
given a reasonable time prior thereto.

"(4) That section 98, known as the re-rating sec-
tion, authorizes the transfer from class 1 to class 2,
at any time prior to January 1, 1911, upon payment
of the new rates, all members in good standing at the
time of the meeting of the great hive at Kalamazoo
June 10, 1910."

None of the laws referred to by counsel for plaintiff
nor the dispensations appear in the finding of facts.
The court below does not appear to have passed upon
either of the contentions stated. The argument of
plaintiff's counsel proceeds with the statement that:

"In the resolution of the executive committee giving
the reasons of the order for declining to pay plaintiff's
claim, the validity of the dispensation in question was
not denied, but, on the contrary, affirmed."

There is no finding upon the subject. Repeatedly
the court is referred in the briefs, as it would be or
might be in a chancery case, to pages of the record
where testimony is found which is used in argument
to support certain propositions advanced by counsel,
concerning which, and the facts upon which they are
founded, the findings are silent. Turning to the brief
for defendant, we find what purports to be a state-
ment of facts, which includes statements of counsel
as to the purport and effect of various laws of defend-
ant and considerable quotations from the testimony
of witnesses with a statement of defendant's theory
of the case and the following conclusion:

"Defendant appeals and assigns error on the ad-
mission of certain evidence, the refusal of the court
to find as requested before judgment, the findings as
made, and the refusal of the court to find as requested

by defendant after judgment, and upon the further ground that there is no testimony in the case to sustain the judgment for the plaintiff."

The law argument immediately follows, discussing two propositions: *First,* that plaintiff cannot recover under the pleadings and contract between assured and defendant; *second,* plaintiff cannot recover under · the dispensation of July 6, 1910. In discussing the second proposition counsel refers to various of the findings and to some of those requested and refused, with the statement that it was error to so refuse inasmuch as the facts are undisputed, and that they should be treated by this court as established facts.

In cases like this this court sits to review errors of law. Enough has been said to show the difficulty experienced in ascertaining what questions of law are presented. We do not find, except as hereinbefore noted, that it is alleged that any of the findings of fact are not supported by testimony, or that the facts which are found do not support the judgment. It is urged, as has been pointed out, that the court ought to have found facts which it did not find—facts which support defendant's theory and upon which in part its argument is based

Under the circumstances, we think we should not attempt to dispose of most of the questions which are debated in the briefs. It appears that it is, and was, disputed that the great commander had authority to issue the July, 1910, dispensation, and that the recital in the findings that it is conceded is not supported by the testimony. Whether she had the authority is, in one aspect, a mixed question of law and fact. There is no finding upon the subject, and there is none from which the conclusion that she had or did not have proper authority may be based. It is essential to plaintiff's recovery that the dispensation should have been issued by authority, or that the action of the great commander in issuing it should have been

ratified, or that defendant's right to insist upon this defense has been waived. If it was proper for this court to hear the cause *de novo* and decide it, undoubtedly a final determination would be reached.

As we can exercise only appellate jurisdiction, we content ourselves with pointing out the error which has been referred to, and reverse the judgment, saving the right to a new trial.

STEERE, C. J., and MOORE, MCALVAY, BROOKE, KUHN, STONE, and BIRD, JJ., concurred.