EDGERLY *v.* LADIES OF THE MODERN MACCABEES.

1. INSURANCE—FRATERNAL BENEFICIAL ASSOCIATIONS.

In an action on a benefit certificate issued by defendant fraternal organization, testimony of the finance keeper tending to show the purpose of insured in permitting her policy to lapse and in withdrawing from the order, was inadmissible under the statute excluding testimony in relation to matters equally within the knowledge of the decedent; but where the record showed that the insured voluntarily permitted her certificate to lapse and made

no attempt to become reinstated until a short time before her decease, the error in permitting the testimony to be offered was harmless and did not require the reversal of the judgment for the defendant insurer.

2. SAME—LAPSE OF POLICY — REINSTATEMENT—SPECIAL DISPENSATION.

A dispensation of the head of a fraternal organization duly authorized, permitting suspended members to be reinstated without furnishing a certificate of good health during the period from June 1st to January 1st was only available to such members as took advantage of it while it was in force: suspended members who failed to take advantage of the dispensation were not in position to claim that they were deprived of any right by a rescission of the dispensation before the day limited therein.

3. NOTICE—FORFEITURE OF A CERTIFICATE.

No personal notice to a member of an order who voluntarily permitted her policy to lapse was required as a condition precedent to rescind such special dispensation; having forfeited her certificate she lost all vested right under the rules of the order, in the absence of any provision of law authorizing or requiring notice of such subsequent action. A member who has been suspended may only be reinstated in strict conformity with the by-laws and has no rights until actual reinstatement has taken place.

4. SAME.

Where the by-laws of a fraternal order required the insured to apply to a regular meeting of the local organization for reinstatement, such dispensation abolishing the requirement of a health certificate did not do away with the requirement of the application to the local branch.

5. SAME.

*Held,* also, that under the by-laws of the order when a member became suspended voluntarily she had only such right of reinstatement as existed at the time of her application therefor, and could not complain of what may have happened during the period of her suspension: nor was the beneficiary under the certificate of insurance in any better position than the insured.

Error to Ingham; Collingwood, J. Submitted Jan-

uary 15, 1915.    (Docket No. 103.)    Decided March 18, 1915.

Assumpsit by Harry Edgerly against the Ladies of the Modern Maccabees upon a certificate of insurance. Judgment for defendant on a directed verdict. Plaintiff brings error. Affirmed.

*Warner, Raudabaugh & Person,* for appellant.

*John B. McIlwain,* for appellee.

STONE, J. This case was before this court in 1913, and will be found reported in 175 Mich., at page 28 (140 N. W. 960). An examination of that opinion will render a full statement of the facts here unnecessary.

It is conceded that, if the certificate of Julia E. Edgerly was in force at the time of her death, the plaintiff, her son, would be entitled to recover. To expedite the trial certain facts were stipulated, among which are the following:

"That assessments Nos. 123, 124, 125, and 126 for the months of August, September, October, and November, 1910, respectively, were duly levied and due notice given thereof, according to the laws of the order.

"That Julia E. Edgerly did not pay or offer to pay assessments 123, 124, 125, and 126 until December 6, 1910.

"That Julia E. Edgerly was not in good health on December 6, 1910, and could not have furnished a certificate of good health on that date."

Mrs. Luella Hodges, the finance keeper of the Lansing Hive, whose duty it was to collect assessments and forward them to headquarters, was called as a witness by the plaintiff. On her cross-examination she testified as follows:

"I was a regular attendant of the lodge meetings,

and finance keeper during 1909 and 1910. I had been a regular attendant, I should think, somewhere about 15 years. During 1910 Mrs. Edgerly was not in attendance at hive meetings. I have no way of knowing how long she had not been an attendant. I don't remember her as a regular attendant of the hive meetings at any time. I sent a notice of her suspension September 1, 1910, to the great record keeper. That would be for the assessment due for the month of August. I understood that if the assessment was not paid during the month she would be suspended the 1st of September. During the last of August I had a talk with her by phone.

"*Q.* What was the nature of it?

"*A.* She informed me that she intended to drop her insurance; not pay the assessment.

"*Q.* Did she give any reason for it?

"*A.* No particular reason. I remember asking her if she was confident that that was what she wanted to do.

"*Plaintiff's Counsel:* All that is objected to, and I ask that it be stricken out as incompetent and immaterial.

"*The Court:* It may stand. (To which ruling of the court plaintiff excepted.)"

On December 8, 1910, Mrs. Edgerly died. On December 6, 1910, two days before her death, and while she was fatally ill, her daughter-in-law called up Mrs. Hodges, the finance keeper, to come to the house. She went there, and the name of Julia E. Edgerly was signed to papers by the daughter-in-law, with the view of effecting her reinstatement. Mrs. Hodges did not see or have any conversation with Julia E. Edgerly in preparing the papers, and the certificate of good health was omitted; and on the 8th day of December—the day Mrs. Edgerly died—Mrs. Hodges, learning that a certificate of good health was necessary, again went to the home of Mrs. Julia E. Edgerly, and her daughter-in-law signed a certificate of good health a few hours before the death of the insured.

The articles of incorporation and by-laws of defendant were put in evidence, and from the latter it appeared that, if a member failed to pay an assessment during the month in which it became due, she would stand *ipso facto* suspended on the 1st day of the succeeding month from all rights and benefits of the order. During the first month of suspension she might be reinstated by merely paying the assessments due. After the first month she must not only pay the assessments, but furnish a certificate of good health to be approved by the great medical examiner.

Section 141 of the laws of the order was introduced in evidence by the plaintiff. It reads as follows:

"Any life benefit member being under suspension after the expiration of thirty days, and before sixty days, must, before reinstatement, furnish a certificate of good health on the form prescribed, acceptable to the great medical examiner, but if after sixty days and within six months, she must pass a full and satisfactory medical examination on the form prescribed by the great executive committee. She may be reinstated upon application being made at a regular meeting of her hive. Such application shall be accompanied by a satisfactory medical examination by the hive physician, to be approved by the great medical examiner. She shall also pay all tax, dues, fines and assessments for which she would have been liable had she remained a member in good standing. The hive finance keeper shall immediately notify the great record keeper of such reinstatement, and forward the money due the order; provided, however, that no suspended member shall be reinstated by any hive unless such application shall be made, examination had and approved, and money paid, within the six months next from and after the date of the failure of such member to pay her liabilities as required as aforesaid."

Julia E. Edgerly never became reinstated on the books of the defendant order.

Upon the trial it appeared that the defendant order

was, during the summer and fall of 1910, engaged in a process of rerating its members; that previously there had been in the order two classes, each class paying its premium in accordance with a different theory. It appeared that the order considered it necessary to readjust and raise its rates. At the great hive meeting held at Kalamazoo in June, 1910, new by-laws had been adopted containing the new rerating provision. These by-laws went into operation on August 10, 1910. Mrs. Edgerly had been in what was known as class No. 1.

By specific language used in section 98 of such by-laws, relating to the rerating provisions, were the following:

"Members who hold certificates in what is known as class 1 shall, on or before January 1, 1911, pay the monthly rate of assessment as provided in table of rates in schedule 4."

While this condition of affairs existed, the great commander, under date of July 6, 1910, issued to the great record keeper what she called a "special dispensation." It reads as follows:

"Ladies of the Modern Maccabees.
"Special Dispensation.
"Office of Great Commander.
"ST. LOUIS, MICH., July 6th, 1910.
"To Emma E. Bower,
"Great Record Keeper,
"Located at Port Huron,
"State of Michigan.

"*Ladies:*
"Under and by virtue of the authority given me in the laws of the L. O. T. M. M., and believing that the best interests of the order will be thereby subserved, I hereby issue to your hive the following dispensations: Allow reinstatements without certificates of good health or re-examination for 120 days from June 1, 1910. Therefore, be governed in accordance herewith in relation thereto.

"Given under my hand and seal and the seal of the L. O. T. M. M. this 6th day of July, 1910.

[Signed] "FRANCES E. BURNS.

"Great Commander.

"EMMA E. BOWER,

"Record Keeper."

The dispensation above referred to was filed in the office of the great record keeper. The great record keeper, after the receipt of the dispensation, sent a notice to the record keepers of the subordinate hives, which reads as follows:

"*To the Membership:*

"The great commander has been requested by the great executive committee to issue a dispensation to allow suspended members over thirty days to reinstate without furnishing a certificate of health, to be in force from June 1st to January 1st, 1911. A member suspended June 1st has under such dispensation until October 1st to reinstate without certificate of health, or re-examination. A member suspended July 1st has until November 1st to reinstate. A member suspended August 1st has until December 1st to reinstate. A member suspended September 1st has until January 1st to reinstate. *  *  *

[Signed] "EMMA E. BOWER,

"Great Record Keeper."

On November 1, 1910, the great commander issued another dispensation in terms annulling the dispensation of July 6th. This reads as follows:

"Ladies of the Modern Maccabees.

"Special Dispensation.

"Office of Great Commander.

"ST. LOUIS, MICH., November 1, 1910.

"To the Officers and Members of Subordinate Hives.

"*Ladies:*

"Under and by virtue of the authority given me in the laws of the L. O. T. M. M., and believing that the best interests of the order will be thereby subserved, I hereby issue to your hives the following dispensation: Members under suspension for over 30

days may be reinstated on a certificate of good health, provided they make out an application for transfer to class II and pay the assessment for the current month on the new rate, and in such case, the members shall be exempted from payment of all arrearages for life benefit assessments or per capita tax. The certificate of health, application for transfer, and assessment for current month shall at once be forwarded to the great record keeper. If the certificate of health is rejected by the great medical examiner, the amount remitted shall be refunded. The payment of hive dues shall be required, also any amounts that the member may have been owing the subordinate hive, or its officers,. on loans. Those members reinstating and taking a rating as of 50 years, must pay the rating as of class II for September and the following months.

"The above dispensation to be in effect from November 1, 1910, to January 1, 1911. You will, therefore, be governed in accordance therewith in relation thereto.

"Given under my hand and the seal of the L. O. T. M. M. this 1st day of November, 1910.

"FRANCES E. BURNS,<br>
"Great Commander.<br>
"EMMA E. BOWER,<br>
"Great Record Keeper."

Notice of this dispensation was sent to the record keepers of the hives, but it appears that notice was not received by the record keeper of the Lansing hive. Under defendant's laws the local finance keeper had no power of reinstatement of suspended members, but could only accept their applications and forward the same to the great record keeper.

There is no evidence that the deceased knew of, or in any manner relied upon, the dispensation of July 6, 1910, in becoming suspended September 1, 1910, or in remaining under suspension, nor was there any competent evidence offered to that effect. It does not appear that she had any correspondence with any of the officers of the defendant, or talked with them in

regard to her membership after September 1st. She had no talk with the finance keeper of her hive about becoming reinstated after the last days of August. There was no evidence in the case that deceased was in any manner misled by the dispensation of July 6th in not paying her assessments within the time required by the laws of the order. Mrs. Hodges, the local finance keeper, in referring to what occurred on December 6, 1910, testified as follows on her direct examination:

"*Q.* What was done at that visit, Mrs. Hodges— the visit of December 6, 1910?

"*A.* The money was paid for the reinstatement of Mrs. Edgerly; amount $13.44. It covered assessment No. 123 in class 1, assessments 48, 49, 50, and 51 in class 2. If I had numbered all those in class 1 they would have been numbered from 123 on. No. 123 was for August, 48 September, 49 October, 50 November, and 51 December. I changed from No. 123 and on to No. 48 and on, because of the difference in the class that Mrs. Edgerly adopted. She passed from class 1 to class 2. Class 2 had only reached that number at that time."

At that time an application for a transfer was made in her name. It reads as follows:

"Ladies of the Modern Maccabees. Application for transfer from class 1 to class 2. The life benefit certificate in class 1 must be surrendered and returned to the great record keeper with this application duly signed.

"LANSING, MICHIGAN, Dec. 6, 1910.

"I, Julia Edgerly, am a life benefit member of Central Hive No. 162, located at Lansing, State of Michigan, and was born on the 2nd day of October, 1856. Now, in consideration of a certificate in schedule 3, issued as directed by me, on the reverse side of this application, in the Ladies of the Modern Maccabees for $1,000, payable to Harry Edgerly, son, I do hereby surrender my life benefit certificate of membership No. 19906 held by me for $1,000 in class 1, and do release the said order from all liability

thereunder. I have paid the last assessment, No. 51, due this month, from class 2, and am a life benefit member in good standing.

"In further consideration of the issuance of the above certificate, I agree to pay the rate in said schedule, as provided in the privilege of transfer, and in all things comply with the laws of the order now in force, or hereafter adopted, governing the said schedule and rates. The warranties and statements made in my original application are herewith re-affirmed and made a part hereof.

"JULIA E. EDGERLY."

Then on the back:

"Rate at Age 50 Option.

"I am now over 52 years of age, and direct that a certificate be issued to me in schedule 3 for $1,000, and I agree to pay the monthly rate in said schedule as of age 50 for the said amount after September 1st.

"JULIA E. EDGERLY.
"LUELLA HODGES, F. K. 162."

This application for transfer was signed by the daughter-in-law of Julia E. Edgerly.

Mrs. Hodges further testified:

"This transfer was then taken by me and receipts were passed. The papers were forwarded to the great record keeper as required. That was done by myself. As I remember it, the transfer took place in the forenoon of the 6th. The papers were mailed directly after leaving there. Those papers were mailed to the great record keeper, Miss Bower.  *  *  * The signature on the application for transfer was made by Mrs. Harry Edgerly. I saw it done, and I did not make any objections to the signature."

It appears that this local finance keeper had attempted to reinstate another person in the same manner as Mrs. Edgerly. That attempted reinstatement had gone to the great hive before Mrs. Edgerly's went in—about two weeks before. Mrs. Hodges got notice in which she was informed a certificate of good health would be required to accompany the reinstatement. This local officer then went to the house of

Mrs. Julia E. Edgerly again, and there obtained, on the 8th day of December, a reinstatement certificate of good health, signed by the daughter-in-law in the name of Julia E. Edgerly. This officer did not see Mrs. Edgerly on that occasion at all, and upon the trial it was admitted by counsel for plaintiff that Julia E. Edgerly died shortly after dinner the same day, and it appeared that she died before the certificate of good health had left Lansing. The $13.44 paid for reinstatement on December 6, 1910, was paid back to plaintiff in part, and the remainder was tendered, but not accepted.

After Mrs. Edgerly's death, plaintiff presented his claim to the executive committee of defendant, and, after an investigation, the claim was disallowed on May 3, 1911. This decision is set forth in full in the record.

No appeal was taken from this decision. The by-laws provide that the decision of the executive committee shall be final, unless an appeal is taken within 60 days to the great hive. At the time of the organization of the order the great hive met once a year. Thereafter this by-law was changed to once in 2 years. In 1910 the law was again changed so that the great hive would not convene for 4 years. It appeared that their then next meeting would be in June, 1914. It was the claim of the plaintiff that this by-law was unreasonable, unfair, and in effect took from the plaintiff the right to appeal at all. Action was immediately started in the circuit court.

It is the claim of the plaintiff that Julia E. Edgerly was a member of defendant order in good standing at the time of her death, having been automatically reinstated by the payment of her dues on December 6th, and he bases his contention in this respect on the following propositions:

(1) That the July 6th dispensation could not be

rescinded because of the vested rights that arose from Mrs. Edgerly's reliance upon it.

(2) That it certainly could not be rescinded without notice to Mrs. Edgerly.

(3) That there was no evidence of any notice of any kind to the Lansing hive, or to Mrs. Edgerly, of the dispensation of November 1st.

(4) That even though there were evidence of notice to the Lansing hive of this dispensation, such notice would not be notice to Mrs. Edgerly, for the reason that, while she still occupied legal relations as toward the order, she was suspended from the local hive, and had no right under the by-laws to be present at the hive meetings; hence notice to the hive could not be notice to her.

(5) The great hive, by its qualified officer, having induced Mrs. Edgerly by its dispensation to believe that the requirement of payment and a health certificate had been waived for 120 days, will be estopped from setting up that condition as a cause of forfeiture.

(6) That the dispensation of July 6th, having been issued and circulated, and it being definitely stated therein that it would be in operation until January 1st, could not be rescinded by the great hive on the instant to take effect on the instant.

(7) The rerating section, without considering the dispensation at all, authorized the transfer from class 1 to class 2 at any time prior to January 1, 1911, without a certificate of good health, or without re-examination, upon payment of dues as to all members in good standing at the time of the meeting of the great hive in Kalamazoo, June 10, 1910.

At the conclusion of the evidence, defendant's counsel moved the court to direct a verdict for the defendant for the following reasons:

(1) Plaintiff has not exhausted his remedy through the tribunals of defendant.

(2) That Julia E. Edgerly became suspended September 1, 1910, and had not become reinstated at the time of her death.

(3) The dispensation of July 6th was but an indulgence or gratuity, available only to those who took

advantage of it while in force. It created no vested right in a member under suspension, and, when rescinded, no right was taken away from insured, as none had been conferred by it.

(4) Notice of a revocation of the special indulgence or privilege was not necessary to be given to suspended members.

(5) A suspended member has no right to the benefits of the order until an actual reinstatement has taken place.

The court directed a verdict for the defendant on the first proposition, that the plaintiff had not exhausted his remedy through the tribunals of defendant society, and a judgment was entered for the defendant. The plaintiff has brought the case here upon writ of error, and, aside from a few questions raised upon the introduction of evidence, only one of which we shall notice, the assignments of error relate to the charge of the court, and allege error in directing a verdict for the defendant, for the reason that the evidence did not support such directed verdict. If it shall turn out that the result reached by the trial court was the correct one, and that upon the trial of the case, for any reason, a verdict should have been directed for the defendant, it is conceded that the judgment below should be affirmed.

Passing the question upon which the circuit judge directed the verdict, and also passing the question whether the great commander had power or authority under the laws of the order to issue the dispensation of July 6, 1910, we think there is a controlling reason why the plaintiff cannot prevail here. There is no evidence in the case that the dispensation of July 6th had any relation to the dropping out of the order of Julia E. Edgerly on September 1, 1910. Whatever her reason may have been, she dropped out, so far as the record shows, voluntarily, deliberately, and purposely.

We are of opinion, however, that the testimony of

the finance keeper as to the statement of Mrs. Edgerly of her intention to withdraw was inadmissible and incompetent under the statute (Act No. 30, Pub. Acts 1903). See authorities cited in *Rousseau* v. *Brotherhood of Yeomen*, 177 Mich. 568 (143 N. W. 626). But, with this testimony eliminated, the record still shows that Mrs. Edgerly dropped out voluntarily. The error in permitting the testimony to stand was harmless. Although she lived in the same city with the finance keeper, no attempt was made in her behalf to become reinstated until on her deathbed, and that attempt was by the daughter-in-law.

The dispensation merely permitted the great record keeper to accept applications for reinstatement of members suspended more than 30 days without furnishing a certificate of good health. It was but an indulgence or gratuity to members who took advantage of it while in force. Those who took advantage of it while it was in force would be protected, because an actual reinstatement would have taken place on the books of the order, and the transaction would have become a closed one. Those suspended members who did not take advantage of it while in force could not claim any right had been taken away from them, because none was covered by it unless an application for reinstatement was made. On November 1, 1910, the great commander rescinded the prior dispensation, and required all members under suspension more than 30 days to furnish a certificate of good health in order to become reinstated. There was no dealing in either dispensation with any member directly.

Counsel for plaintiff seem to contend that personal notice should have been given to Julia E. Edgerly of the November 1st dispensation, rescinding the prior one. We are unable to find any provision of the laws of the order or authority sustaining the proposition

that when a member voluntarily drops out of the order, and thereby her certificate becomes forfeited by the express terms of her contract with the order, she has still a vested right to have notice of subsequent action of the order. When she actually dropped out, the order had the right to treat her as suspended. There is no evidence to justify the claim of plaintiff that Julia E. Edgerly was misled or deceived by the action of the order, or that she placed any reliance upon the July dispensation, or knew of it. She knew that, if she did not pay her assessments, she would stand suspended, and with that knowledge she voluntarily and deliberately became suspended and dropped out of the order.

A member who has become suspended can only be reinstated in strict conformity with the laws, and has no rights until an actual reinstatement has taken place. 29 Cyc. p. 38, and cases cited. This doctrine seems to be sustained by *Hay* v. *Benefit Ass'n*, 143 N. C. 256 (55 S. E. 623).

It is worthy of passing note that the dispensation did not attempt to do away with application to the local hive. We quote from section 141: "She may be reinstated upon application being made at a regular meeting of her hive." We have looked in vain in this record for any such application, or any action of the local hive. The local finance keeper undertook to restore Mrs. Edgerly, without any action of the hive or any consultation with that body, so far as this record shows.

We are unable to agree with plaintiff's contention that section 93 of the by-laws of 1910, which is the reinstating section, confers some rights upon suspended members to become reinstated. That section deals with "members," not suspended members.

It will be noted that the paper signed "Julia E. Edgerly," on December 6, 1910, does not purport to

be an application for reinstatement, but is, on the contrary, an application for transfer from one class to another. It seems to have been assumed that the reinstatement had already taken place, and that the applicant was a member in good standing. We do not understand that such was the fact. We agree with the contention of defendant that, when a member suspends herself, which, by the provisions of the contract, suspends her relations with the order, she only has such right of reinstatement as exists at the time she applies for reinstatement. What may have happened during the period of her suspension she cannot complain about; and her beneficiary is in no better position than she would be.

At the time the application was made for Julia E. Edgerly to be reinstated, if any was made at all, a certificate showing her good health was necessary. This was not, and could not be, furnished. The trouble with the plaintiff's case is that at the time of the death of his mother her beneficiary certificate had been suspended, and there had been no reinstatement thereof. That was the status at the time of her death.

For the reasons already stated by us, the judgment of the circuit court is affirmed.

BROOKE, C. J., and MCALVAY, KUHN, OSTRANDER, BIRD, MOORE, and STEERE, JJ., concurred.