### SUMERLIN v. AMERICAN FRATERNAL STARS.

1. INSURANCE—BENEFICIAL ASSOCIATIONS—CONTRACT OF INSURANCE —ORAL PROMISE—SUSPENSION OF MEMBER.

A verbal promise by the supreme secretary of a mutual benefit association to notify a member when he was in default could not be substituted for the written contract of insurance whereby the payments became due and payable at certain fixed times, without notice, and if not paid the member became suspended.

2. SAME—CONSTITUTION OF ORDER—SELF-EXECUTING PROVISIONS.

The provision in the constitution of the association that any member failing to pay his monthly payments according to the laws of the order "shall be suspended from the order, and his policy shall become null and void," is self-executing.

3. SAME—FORFEITURE—WAIVER.

Where the laws of the order provided that the furnishing of blank proofs of death "shall not be construed as a waiver of any of the rights of the order," the acceptance of the payment in arrears and asking for proofs of loss and additional proofs did not constitute a waiver of its right to insist upon a forfeiture.[1]

Error to Kent; Brown, J.   Submitted April 16, 1918.   (Docket No. 99.)   Decided June 3, 1918.

[1]See notes in 4 L. R. A. (N. S.) 421; 38 L. R. A. (N. S.) 571; L. R. A. 1915E, 152.

Assumpsit by Gertrude A. Sumerlin against the American Fraternal Stars on a policy of insurance. Judgment for defendant on a directed verdict. Plaintiff brings error. Affirmed.

*Colin P. Campbell,* for appellant.

*George Hollway,* for appellee.

Plaintiff's husband, Ambrose N. Sumerlin, held a policy of insurance upon his life in the defendant company, which, with its accumulations, amounted, at the time of his death, on January 8, 1917, to $745.80. This suit is brought by plaintiff as beneficiary under said policy to collect said sum. The policy provided for the payment

"by the insured of $1.55 on or before 10 o'clock p. m. of the last day of each calendar month, as approved by section eleven (11) of the laws of the Order of American Fraternal Stars."

Section 11 of the defendant's by-laws is in part as follows:

"The rate to be paid by every benefit member shall be paid monthly not later than 10 o'clock p. m. of the last day of each calendar month, according to the above table of rates. The amount to be paid monthly by each benefit member shall be in accordance with the foregoing table of rates, based upon the age of certain members at the time of issuance of his policy, and no notice of such premiums shall be required of the order."

Section 1 of article 10 provides:

"Any member failing to pay his monthly payments, according to the provision of section 19, article 7, or dues according to the provision of section 15, article 4 of the general laws of the order, shall be suspended from the order and his policy shall become null and void."

Section 2 of article 10, relative to reinstatement, is as follows:

"Any such suspended member may become reinstated upon the order of the supreme secretary by paying to the local secretary within sixty days from the date of suspension the amounts due; provided he is in good health at the time of such payment and not engaged in any prohibited occupation by the laws of this order. A statement and warranty of the health and occupation of the applicant for reinstatement must be signed by him, attested by the local secretary and forwarded to the supreme secretary."

It is undisputed upon the record that the last payment made by the insured under his policy was made on September 14, 1916, on which day he paid for the months of July, August, September and October. Under the terms of his policy on the last day of November a payment fell due and a similar payment was due on the last day of December, 1916. Neither of these payments was made. The insured became dangerously ill about the middle of December, 1916, and died on January 8, 1917. It appears from the record that the head office of the defendant fraternal society was located in the Porter block in the city of Grand Rapids and that the insured, Dr. Sumerlin, conducted a drug store in the same block. One Alfred B. Loomis was supreme secretary of the defendant order during the years 1915-1916 and 1917. On two occasions and perhaps oftener, Mr. Loomis called upon the insured at his store and advised him of the fact that he was in arrears with his payments. Being so advised the insured paid up the dues then in arrears and one or two months in advance. Being in arrears in November and December, Loomis called at the store late in December and inquired for the insured. He was told that the insured was not in. On Saturday, January 6, 1917, Loomis called plaintiff's house on the telephone, talked with Mrs. Sumerlin and then for the

first time learned that Mr. Sumerlin was ill.   He advised plaintiff that her husband was in arrears upon his insurance policy and she said that she would have it attended to.   The details of this conversation are somewhat in dispute, but the differences are neither important nor controlling.   On Monday morning, the 8th, before 11 o'clock, a clerk from the store of the insured paid to a subordinate in the office of the supreme secretary the sums then in arrears under the policy and the insured died at 12:30 p. m. on that day. No statement and warranty of good health signed by the insured was filed at the time the payment was made on the morning of the 8th, as provided in section 2, of article 10.   Proofs of death and additional proofs were furnished.   Sections 1 and 2 of article 12 provide for the furnishing of such proofs and contain the following:

"But the furnishing of such blanks shall not be construed as a waiver of any of the rights of the order."

Under the foregoing state of facts the learned trial judge directed a verdict for the defendant, saying in part:

"Now, in this case 30 days had expired (figuring from the 30th day of November, when the first default was had) on the 30th day of December.   From the 30th day of December, 1916, until the 8th of January, 1917, in my way of viewing it, Dr. Sumerlin was a suspended member, or was cut off from this association for failure to pay his dues.   From the 23d day of December until the day of his death (which was the 8th day of January) Dr. Sumerlin was entirely prohibited, under the by-laws of this association, from being reinstated.   Or I probably should make that from the 30th day of December.   From the 30th day of December, 1916, to the 8th day of January, 1917, the Doctor was cut off from the ability to be reinstated, because he was in a very sick condition and unable to produce a certificate of good health."

Brooke, J. (*after stating the facts*). Counsel for appellant contends:

*First.* That after the agreement of the supreme secretary to see to it that the assured did not lapse out, that the order is not in a position to insist that he did lapse.

*Second.* That the assured had not been suspended, because no formal action suspending him had been taken.

*Third.* That the action of the order in accepting payment on the 8th of January, in retaining that payment until the 8th of May, and in asking for proofs of loss and additional proofs of loss, involving the expenditure of time and money by the plaintiff, that the order waived any right to insist upon a forfeiture.

1. Assuming for the purpose of the case (though the question is in dispute), that Loomis, the supreme secretary, promised to remind the assured when he was in default in order that his policy should not lapse, we are of opinion that the contention of counsel for plaintiff cannot be sustained. This action is based upon a written contract and the rights of the parties must be determined according to its tenor. By that contract the insured undertook to make the payments before 10 o'clock p. m. on the last day of each calendar month. It would, we think, be a dangerous practice to permit the substitution of a verbal agreement for the written contract, even though the same were undisputed, which is not the situation in the case at bar.

2. We are of opinion that the provisions of section 1 of article 10 are controlling and that the words: "shall be suspended from the order and his policy shall become null and void," are self-executing. Counsel for appellant cites in support of this contention the following cases: *Petherick* v. *Order of the Amaranth*, 114 Mich. 420; *Dick* v. *Order of the Amaranth*, 150 Mich. 215; and *Roulo* v. *Schiller Bund*, 172 Mich. 557. An examination of these cases will demonstrate that the provisions relative to suspension in the policies

there under consideration differed from those provisions in the policy in suit.    They are therefore not controlling.

3. The provision of section 1, article 12, which states that the furnishing of blank proofs of death shall not be construed as a waiver of any of the rights of the order, disposes of this contention.

This case upon its facts is much like the case of *Edgerly* v. *Ladies of the Modern Maccabees*, 185 Mich. 148, and is controlled by the same legal principles.

The judgment is affirmed.

OSTRANDER, C. J., and BIRD, MOORE, STEERE, FELLOWS, STONE, and KUHN, JJ., concurred.