# OCTOBER TERM, 1918.*

STAFFAN *v.* CIGARMAKERS' INTERNATIONAL UNION OF AMERICA.

INSURANCE—BENEFICIAL ASSOCIATIONS—MUTUAL INSURANCE—NON-PAYMENT OF DUES—FORFEITURE—ESTOPPEL.

Where a member of a local cigarmakers' union was habitually delinquent in the payment of dues, of which the secretary of the international union had knowledge, and the local union urged him to pay to avoid suspension, although he was more than eight weeks in arrears and already suspended under the constitution, and he continued to pay, and the local union to accept, his dues without regard to the provisions of the constitution as to reinstatement, *held*, that the international union is estopped from dropping him from membership and forfeiting his benefit policy at a time when he was in arrears less than eight weeks. OSTRANDER, C. J., dissenting.

Error to Washtenaw; Sample, J. Submitted October 10, 1918. (Docket No. 28.) Decided December 27, 1918.

Assumpsit by Mary E. Staffan against the Cigarmakers' International Union of America for the amount of a benefit certificate. Judgment for plaintiff on a directed verdict. Defendant brings error. Affirmed.

*A. J. Sawyer* and *H. A. Baker,* for appellant.

*Lehman & Lisle* (*George J. Burke,* of counsel), for appellee.

BROOKE, J. Plaintiff is the widow of Chauncey L. Staffan. Staffan had been a member of the defendant

*Continued from Vol. 203.

Cigarmakers' International Union of America since September 15, 1894. He died October 11, 1917. The defendant is an association for the amelioration of labor, commonly called a labor union. It has headquarters in the city of Chicago and is made up of local unions maintained all over the United States, Canada, and Porto Rico, whose members are engaged in the cigarmaking industry. The parent body and the local unions of which it is made up operate under a constitution which the members take an obligation to support. Section 73 of said constitution provides:

"Any member other than retiring card holders, owing dues or assessments for eight weeks or more, stands suspended from benefits. The death benefit shall not be included in the suspension from benefits in eight weeks' arrearage. If the member or 20 cents dues paying members within two weeks from such suspension places himself within the eight-week limit and remains within such limit for ninety days from date of suspension, he shall be restored to his previous rights. Failing to comply with the above he shall stand suspended."

Section 144 is as follows:

"Including the fifty dollars funeral or cremation expenses, there shall be paid upon the death of a member the following sums, viz.: If the decedent shall have been such member continuously for five years or longer period less than ten years next preceding his death, the sum of two hundred dollars. If the decedent shall have been such member continuously for ten years or longer period less than fifteen years next preceding his death, the sum of three hundred and fifty dollars. If the decedent shall have been such member continuously for fifteen years or longer next preceding his death, the sum of five hundred and fifty dollars."

Section 144b is in part:

"Should any member be adjudged incurably insane or should any member be adjudged insane and

committed to an institution for the insane and there remain for the period of two years and it shall then be the opinion of the officer in charge of such member that such insanity is incurable, then the amounts above provided to be paid in case of the death of such member (except the fifty dollars funeral or cremation expenses) shall become due and payable as in case of such member's death."

An exhibit taken from the ledger of the local union shows that Staffan on August 26, 1916, was in arrears 28 weeks; that he made payments on account thereof until at the end of 1916 he was in arrears 14 weeks. During the year 1917 he made payments reducing his obligation so that on June 23, 1917, he was less than 8 weeks in arrears. On that date the exhibit shows that he was dropped from the rolls under the provisions of section 144b above quoted. Staffan having been a member of the organization for upwards of 20 years plaintiff was entitled to be paid the sum of $550 under the provisions of section 144 unless the fact that her husband had been in arrears more than 8 weeks during the year 1916 and the early part of the year 1917 operated to defeat her claim.

It is the contention of defendant that the provisions of section 73 relative to suspension are self-executing and that Staffan was automatically dropped from the rolls under the provisions of said section and never was reinstated under the provisions of section 67 which follows:

"Any member suspended by any local union can be reinstated on payment of $5, which may be paid in five weekly installments, or all at once, at the option of the union. But he shall forfeit all previous rights and benefits, and be considered the same as a new initiate. But this shall not be so construed as to mean the invalidation of any indebtedness, local or international, previously incurred. Nor shall any local union increase or diminish the fee herein set forth for the reinstatement of any suspended member."

John E. Kranich, the secretary of the local branch of which Staffan was a member, testified that the last payment made by Staffan brought him within the 8 weeks' limit fixed by the constitution. He further testified:

"At the time he was committed I wrote for instructions and they told me what entry to make.

"*Q.* In doing that you did not intend to suspend Mr. Staffan from the union?

"*A.* By the constitution he was suspended.

"*Q.* Was he ever before the local union?

"*A.* No, but if,—

"*Q.* Was he ever suspended by the local union?

"*A.* No. He never paid the back dues without being urged. I went to see him, I didn't really say to him he would have to pay up or I would have to drop him, but he finally did make it all up and at his death he had paid every assessment that was necessary to bring him within the constitution, he paid enough in amount to make 30c a week.

"*Q.* I believe you testified he was never suspended by this local union?

"*A.* He never was. * * * If we suspend a man we do not still go around collecting dues from him, if he had been suspended under section 67 of our constitution he could have been reinstated on the payment of $5. He was not suspended by the local union, the International Union does the suspending. No matter what I do, I could pay sick benefits or do anything I have a mind to, to use up all the funds, but when the financier comes around he goes over all the books and checks up the items and if there are any sick benefits paid or dues collected that oughtn't to have been he checks it.

"*Q.* Does he notify the member that he is suspended?

"*A.* Why, yes.

"*Q.* Was Staffan ever notified that he was suspended?

"*A.* He was dead. No action was taken while Staffan lived.

"*Q.* He paid his dues to the local?

"*A.* Yes.

"*The Court:* What did the witness testify to as to the custom?

"*Q.* The financial secretary comes around how often?

"*A.* About every five years.

"*Mr. Balser:* He testified they are automatically suspended.

"*Q.* Did other members ever fall behind?

"*A.* Yes, sir. There were several members who fell behind and were suspended. Staffan was never suspended.

"*Q.* Did other members ever fall behind?

"*A.* Yes, sir. There were several members who fell behind and were suspended. Staffan was never suspended by the local. The local secretary of this organization is the officer upon whom is laid the collection of assessments and weekly dues. It is one of my duties as secretary to collect either, 15, 20, or 30 cents from each member each week and any assessment which may be levied by the C. I. U. A. That money is placed in the bank by the treasurer and is drawn on by the C. I. U. A., and money which Staffan paid into this fund from 1894 as assessments and benefits were drawn the same as the money from anybody else. He was never suspended. I do not know just what day it was I saw Staffan before he was committed, I would say about a week before, you couldn't talk much of anything to him then, he did all the talking. I did think he paid the 50c before he was committed. He paid that in four installments and paid it off, that was entirely all right. The money is now in the hands of the C. I. U. A., and no money has ever been returned to Mr. Staffan, only that he got sick benefit under the constitution,"

—and on cross-examination:

"*A.* The C. I. U. A. did not know, they have no way of knowing. The C. I. U. A. had no way of knowing until after Mr. Staffan's death that Mr. Staffan had ever been back in his dues. On page 125 it is shown that Staffan was some 28 weeks back in the payment of his dues, but it is true that he paid along until he caught up, the local union accepted his money so that at the time of his death he was inside the eight-week

limit or period and the $2.61 that he was back would not cut any figure as bearing on the claim he might have for $550. $500 of that money is for the wife and $50 is for funeral expenses."

Further on re-examination:

"The financial secretary came here last on October 17, 1917. That was after Staffan's death, before that he was here about 1912. I do not know whether Mr. Staffan [was] behind in his dues in 1912. I haven't that in this book. It is true, members get behind in their dues and I go around and touch them up. We have to pay the local assessment. I go around and collect it and take it as dues and they expect to get the benefit of it.

"*Q.* And you lead them to believe they will if they pay,—

"*A.* I am not trying to lead anybody. I suppose I might of told Chauncey Staffan that he would better hurry up and pay up or I would suspend him.

"*Q.* And he did pay up?

"*A.* He paid up.

"*Q.* And get within the limit, and all the suspending that is ever done is done by the local union?

"*A.* Well,—

"*Q.* And if you once suspend him and he wants to get back in, it costs $5, that is true?

"*A.* Yes, it costs him $5 to get back, but we are governed by the local union. It would not make any difference to me personally if Chauncey's wife got the money, I would like to see her get it, but as an officer of the union I cannot pay it, I have to live up to the constitution and see that it is enforced. Under the constitution if there is no beneficiary designated the wife is the beneficiary and Mrs. Staffan is entitled to this benefit if it is paid. * * *

"I do not know whether Staffan was ever behind in his dues prior to the time the secretary came around and before in 1906 or 1907 when he was sick, I cannot tell what happened then. I was at Howell. Staffan was allowed to pay up. The money was taken as dues. * * *

"This book which I hold in my hand is a day-book Ex. 5. Some of the entries were made in 1906:

"*Q.* State whether or not that book shows whether Chauncey Staffan was behind in his dues in the year 1906?

"*A.* It does not show, no. This day-book shows he paid $6.60 dues.

"*Q.* If he had been up in his dues he would not have paid that much?

"*A.* No, that is not quite sure. He was secretary around 1906 before the last time. He was not suspended but he lost his office as secretary, he continued to pay his dues.

"*Q.* And the C. I. U. A. secretary had knowledge of the fact he was behind?

"*A.* Why, sure."

Upon an examination of this testimony we think it affirmatively appears that Staffan was in arrears as early as the year 1906. It appears that the financial secretary of the supreme body visited the locals about once in five years; that he was here in 1917, in 1912, and presumably in 1907. The visits in 1907 and 1912 occurred after Staffan's delinquency in 1906 and the secretary of the supreme body according to the testimony of Kranich had knowledge of such delinquency. It further appears that during the years 1916 and 1917 Staffan was urged to make payments to the local in order to prevent suspension and that he made such payments for that purpose to a point which finally, and shortly before his commission as an insane person, brought him within the constitutional period of 8 weeks.

It is elementary that the law abhors forfeitures and will avoid them whenever reasonable ground can be found for so doing. We are of opinion that the facts in this case bring it clearly within the rule laid down in *Wallace* v. *Mystic Circle*, 121 Mich. 263, wherein we quoted with approval the following:

"If the company has, by its course of conduct, acts, or declarations, or by any language in the policy, misled the insured in any way in regard to the payment

of premiums, or created a belief on the part of the insured that strict compliance with the letter of the contract as to payment of the premium on the day stipulated would not be exacted, and the insured in consequence fails to pay on the day appointed, the company will be held to have waived the requirement, and will be estopped from setting up the condition as cause for forfeiture. In determining whether there has been a modification of the terms of the policy by subsequent agreement, or a waiver of the forfeiture incurred by the nonpayment of the premium on the day specified, the test is whether the insurer, by his course of dealing with the insured, or by the acts and dealings of his authorized agents, has induced in the mind of the insured an honest belief that the terms and conditions of the policy, declaring a forfeiture in event of nonpayment on the day and in the manner prescribed, will not be enforced, but that payment will be accepted on a subsequent day or in a different manner; and when such belief has been induced, and the insured has acted on it, the insurer will be estopped from insisting on the forfeiture. See *Jones* v. *Assurance Co.*, 120 Mich. 211."

See, also, *Lord* v. *Protective Society*, 129 Mich. 335. The recent cases of *Edgerly* v. *Modern Maccabees*, 185 Mich. 148, and *Sumerlin* v. *American Fraternal Stars*, 202 Mich. 154, upon which defendant seems to principally rely, have been examined. We are of opinion that the facts in the case at bar are so at variance with those considered in the cases cited as to render them inapplicable here.

Judgment is affirmed.

BIRD, MOORE, STEERE, FELLOWS, STONE, and KUHN, JJ., concurred with BROOKE, J.

OSTRANDER, C. J. In my opinion Staffan stood suspended at the time of his death.