BROCKWAY *v.* MICHIGAN MUTUAL HAIL INSURANCE CO.

1. APPEAL AND ERROR—DIRECTED VERDICT.

Where a verdict was directed for plaintiff, the proofs, on error, should be considered in the light most favorable to defendant.

2. INSURANCE—HAIL INSURANCE—LOSS WHILE SUSPENDED—REINSTATEMENT.

Where plaintiff, a member of a mutual hail insurance company, suffered a loss by a hail storm while he was four years in arrears for assessments and under suspension by action of the secretary in accordance with the by-laws of the association, he was not entitled to recover, although after his loss, but without making known the same, he paid up and was reinstated. MOORE, WIEST, and BIRD, JJ., dissenting.

3. SAME—WAIVER.

Defendant, by accepting payment of the arrearage, waived no rights as to the loss sustained while plaintiff was. under suspension, since he had a right, under the by-laws, to be reinstated at any time, and, as to any future loss, would be protected. MOORE, WIEST, and BIRD, JJ., dissenting.

4. SAME.

The doctrine of waiver is based on something said or done by the insurer or its failure to do some act which it was its duty to do to avoid a waiver by reason of which the insured is led to believe that he is still recognized as a member and entitled to rights under his policy.

Error to Genesee; Brennan (Fred W.), J.  Submitted April 13, 1921.  (Docket No. 86.)  Decided October 3, 1921. Rehearing denied December 22, 1921.

Assumpsit by Marion Brockway against the Michigan Mutual Hail Insurance Company on a policy of insurance.  Judgment for plaintiff on a directed ver-

Authorities passing on the question of provisions as to payment of premiums in hail insurance policy, are collated in a note in 4 A. L. R. 1303.

dict. Defendant brings error. Reversed, and no new trial ordered.

*Thomas F. Stockton* (*Kinnane, Black & Leibrand,* of counsel), for appellant.

*Withey & Freeman,* for appellee.

MOORE, J. (*dissenting*). In this case plaintiff recovered a verdict for $500 by direction of the judge, given to the jury. The defendant is an insurance company organized under the laws of Michigan. The plaintiff is the owner of a farm in Genesee county, and a member of the defendant company. Plaintiff paid his assessments for 1912, 1913 and, 1914, but did not pay them, except as hereinafter stated, for the years 1915, 1916, 1917 and 1918, claiming that he had no notice of these assessments. The four assessments for 1915, 1916, 1917 and 1918, were sent by the defendant to a justice of the peace at Flushing for collection, and defendant notified the plaintiff of its action, and that if they were not paid suit would be brought. The justice sent no notice to plaintiff and suit was not brought.

On July 14, 1919, plaintiff had a loss by hail. On July 15th, he drove to Lansing and went to defendant's office and paid to Mrs. Ethel M. Gettle, defendant's clerk, the amount claimed against him for the years 1915, 1916, 1917 and 1918, total $13.30. When plaintiff called at defendant's office on July 15th, Mrs. Gettle informed him that Mr. Garber, the defendant's secretary, was out of the city. Mrs. Gettle and the defendant are not agreed as to what was said when the assessments were paid.

On February 15, 1920, plaintiff commenced this suit. The defendant pleaded the general issue and gave notice that the policy had lapsed on account of the failure to pay assessments. When both parties rested,

plaintiff moved for a directed verdict for $500 for the reason that defendant had waived the suspension of the policy by accepting the assessments and not returning them. The court granted the motion. This ruling of the court is the only error assigned. The defendant retained the money paid to Mrs. Gettle and still retains it.

In article 12 of the charter of defendant company is the following:

"Notice of assessment shall be mailed to the last known post office address of each member on or before November first of each year when an assessment is called. All assessments shall be a lien on the property insured until said assessments are paid."

The plaintiff claims he did not receive any notice of assessments which he did not pay promptly.

Section 2 of the by-laws reads:

"SECTION 2. The secretary may cancel or suspend a policy or any part thereof, for the noncompliance of any of the laws of the company or for the nonpayment of any assessment after the expiration of 30 days from the date of the notice of the same; provided, however, that before a policy can be cancelled for aforesaid causes, the insured shall be given 10 days' notice in which to establish to the president and secretary the injustice of the cancellation."

We are unable to find any provision, either in the charter or the by-laws as to what the effect will be of a suspension of a member for nonpayment of assessments. It is conceded that no formal entry was made upon the books of the company of an order of suspension.

Counsel for appellant say:

"We claim that this judgment cannot be affirmed without overruling *Williams* v. *Insurance Co.*, 19 Mich. 451 (2 Am. Rep. 95), and *Hill* v. *Insurance Co.*, 129 Mich. 144, which are absolutely controlling of the instant case."

An examination of the first case will show that the policy involved was a marine insurance policy, and that the question of assessments and the effect of nonpayment thereof was not involved. The case of *Hill* v. *Insurance Co.*, 129 Mich. 144, is easily distinguishable from the instant case in that the defendant did not retain the money which was paid to it after the loss occurred, but promptly returned it to the plaintiff.

The law is well settled that the courts do not favor forfeitures and a provision for forfeiture will be strictly construed and courts will find a waiver upon slight evidence when the equity of the claim is in favor of the insured. *Lyon* v. *Insurance Co.*, 55 Mich. 141; *Jones* v. *Assurance Co.*, 120 Mich. 211; *Lord* v. *Protective Society*, 129 Mich. 335; *Staffan* v. *Cigarmakers' Union*, 204 Mich. 1.

The case before us instead of being controlled by the cases cited by the appellant are more like the cases of *Farmers' Mutual Fire Ins. Co.* v. *Bowen*, 40 Mich. 147; *Elmondorph* v. *Insurance Co.*, 91 Mich. 36; *Towle* v. *Insurance Co.*, 91 Mich. 219; *Dick* v. *Order of the Amaranth*, 150 Mich. 215; *Reimold* v. *Insurance Co.*, 162 Mich. at p. 73; *Laxton* v. *Insurance Co.*, 168 Mich. 448.

29 Cyc. p. 194, reads:

"It generally constitutes a waiver of the right to avoid the contract of insurance so to declare a forfeiture, where the society, with knowledge of the existence of grounds of avoidance or forfeiture, unconditionally accepts dues or assessments from the member in question, at least where the society retains the money thus paid even though it was received and retained after the death of the assured."

In the case of *Phenix Ins. Co.* v. *Tomlinson*, 125 Ind. 84 (25 N. E. 126, 9 L. R. A. 317), the question arose concerning the payment of a loss which had occurred while the premium note was still due and unpaid. The policy contained this provision:

"In case assured fails to pay the premium note, or order, at the time specified, then this policy shall cease to be in force, and remain null and void during the time said note, or order, remains unpaid after its maturity, and no legal action on the part of this company to enforce payment shall be construed as reviving the policy. The payment of the premium, however, revives the policy and makes it good for the balance of its term."

The case shows that the premium note was paid after the loss and the money accepted and retained by the company. Justice Elliott, in rendering the opinion, said in part:

"It is established law, that the right to declare forfeiture of a policy for the nonpayment of premiums, may be waived, and that the waiver may be manifested by conduct as well as by words. * * *

"This general rule is too firmly settled to be shaken, so that the only question which is here open to controversy is, whether the company did waive the right to forfeit the policy by an acceptance of the premium after the loss had occurred." * * *

He then considers some cases cited by the insurance company and calls attention to the difference between the cases so cited and the one that is being construed, saying:

"For the reason that in those cases the premium notes were shown to be unpaid at the time of the loss, and it did not appear that the insurance company had subsequently accepted payment, while here there was an acceptance of the premium after the loss occurred.

"We cannot perceive any valid ground upon which it can be held that an insurance company may accept payment of the entire premium after a loss has occurred, and yet escape payment of the loss. By accepting payment, it affirmed the validity of the policy and tacitly asserted that the policy was in force from the time it was executed. * * *

"It is a principle of wide sweep that forfeitures are not favored, and within the spirit of this principle such cases as this clearly fall, * * * for it is but

just that the company having accepted the entire premium after the occurrence of the loss should yield the consideration for which the premium was paid. It is not just that the company should retain the premium and give no value in return. * * *

"We have studied with care the cases referred to by the appellant's counsel, and we cannot regard them as sustaining the position counsel assume, for we do not believe that in any of them is the doctrine asserted that under such a policy as that before us the insurance company may, with knowledge of the loss and notice that the assured is affirming the validity of the policy, accept and retain the entire premium and yet refuse to pay the loss."

In the case before us the insurance company has received and retained the full amount of money it would have received if the plaintiff had received notice of the assessments and paid them promptly.

Judgment should be affirmed, with costs to the appellee.

WIEST and BIRD, JJ., concurred with MOORE, J.

SHARPE, J. I cannot concur in the foregoing opinion. A verdict was directed for plaintiff. The proofs must therefore be considered in the light most favorable to defendant. I find the following facts to be established, and note wherein there is any dispute:

1. The defendant is a mutual company, its ability to pay claims being dependent upon its collection of assessments.

2. On March 14, 1912, plaintiff applied for membership and a certificate was issued protecting him against damage by hail to the amount of $700.

3. By the terms of this certificate, the defendant reserved the right to cancel it "at any time upon good and sufficient reason." The by-laws, which it is conceded became a part of the contract, provided that:

"The secretary may cancel or suspend a policy or any part thereof * * * for the nonpayment of

an assessment after the expiration of 30 days from the date of the notice of the same."

4. Assessments are made as of November 1st in each year. Notice thereof is to be given the members by mail. The plaintiff paid his assessments for 1912, 1913 and 1914. Notice of assessment for 1915 was duly mailed to him. He claims he did not receive it. On May 1, 1916, the secretary suspended the policy of plaintiff for nonpayment. It was not cancelled. While assessments were not made against him in 1916, 1917 and 1918, notices thereof were mailed to him. He claims he did not receive them. He had the right to have the suspension removed at any time by payment of the amount of the delinquent assessments. He admits receiving a letter in March, 1919, notifying him that a statement of the amounts owing by him had been sent to a justice of the peace at Flushing for collection. He paid no attention to it.

5. On July 14, 1919, plaintiff sustained a loss by hail. The following day he went to the office of the secretary in Lansing and paid to Mrs. Gettle, the employee in charge thereof, the assessments for 1915, 1916, 1917 and 1918. The secretary was not present. Mrs. Gettle testified that plaintiff was on the list of suspended members; that he "said he wanted to be reinstated;" that after payment he said, "Now if I had a loss I would be paid," to which she replied, "No, but if you have a loss tomorrow you notify us and we will take care of you." She further testified, "And then it dawned on me possibly that Mr. Brockway had a loss. I said to him, 'Have you had a loss by hail,' and he answered, 'We have not even had any rain.'" The plaintiff admits that he did not inform Mrs. Gettle of his loss. He testified:

"I paid the $13.30 because I wanted to get my insurance under my policy. I would not have paid if I had not; I would have kept my money in my pocket."

6. The plaintiff's name was again placed on the list of active members. A notice of the 1919 assessment was mailed to him. He remitted a postoffice order therefor. As suit by him was then threatened, the secretary, on his attention being called to it, returned the order to plaintiff, saying that he did "not think it quite right to take your assessment this year when you had a bad loss and could not recover on account of being four years in arrears when storm hit your crops."

Under these facts, I do not think plaintiff was entitled to recover. We must not lose sight of the distinction between the suspension of a policy and its cancellation. If suspended, a member has the right to become reinstated at any time by paying all delinquent assessments. If his policy has been canceled, a new application must be made and a new policy issued. The doctrine of waiver is based on something said or done by the insurer or its failure to do some act which it was its duty to do to avoid a waiver by reason of which the insured is led to believe that he is still recognized as a member and entitled to rights under his policy. *Staffan* v. *Cigarmakers' Union,* 204 Mich. 1, 7. What did the defendant say or do or omit to say or do on which this plaintiff relied to his disadvantage? It accepted payments of the assessments delinquent on his policy and reinstated it at his request. It sent him notice of the 1919 assessment. When he remitted therefor, the secretary returned it to him for the reason stated. How can it be said that these acts constitute such a waiver as renders the defendant liable for a loss incurred while the policy was suspended?

Plaintiff's failure to pay rendered him subject to suspension. He was suspended in May, 1916. He had no rights after suspension until he became reinstated. *Edgerly* v. *Ladies of the Maccabees,* 185

Mich. 148, 162. He tendered payment and asked to be and was reinstated. While he at that time concealed the fact that he had suffered a loss during the period of his suspension, it would have been incumbent on the defendant to accept such payment and reinstate him notwithstanding such loss. He thereby became protected against future losses. It cannot be said that he relied on his reinstatement as entitling him to recover for a loss during the period of his suspension. He had no legal right to a recovery, and payment to him would have worked a hardship, if not a fraud, upon the members who would have been called upon to contribute thereto. The language of Mr. Justice GRANT in *Hill* v. *Insurance Co.*, 129 Mich. 141, 144, is pertinent:

"It was the duty of the plaintiff to pay. He agreed that his policy and all rights under it should be suspended while he was in default. Under the ruling of the court, this right of suspension is valueless to the company, because any insured would pay his back premiums after a loss if by so doing he could reinstate his insurance and collect his loss. This is not a reasonable construction of this contract of insurance."

The conclusion reached is in harmony with the rule laid down in *Williams* v. *Insurance Co.*, 19 Mich. 451 (2 Am. Rep. 95), and in the case just quoted from. I cannot but feel that the opinion of Mr. Justice MOORE squarely overrules these cases. I have examined with care the decisions on which he relies. They are easily distinguished if we but bear in mind the distinction between the suspension of the policy of a member of a mutual company and an act of the officers by which a cancellation or forfeiture of the rights of the insured is claimed to have been effected.

The judgment is reversed, with costs to defendant, and no new trial ordered.

STEERE, C. J., and FELLOWS, STONE, and CLARK, JJ., concurred with SHARPE, J.