# STATE OF MICHIGAN

# COURT OF APPEALS

SANDRA JEAN OWEN,

Plaintiff-Appellee,

and

BEAUMONT HEALTH SYSTEM,

Intervening Plaintiff-Appellee,

v

BRISTOL WEST PREFERRED INSURANCE
COMPANY,

Defendant-Appellant.

UNPUBLISHED
March 10, 2016

No. 323036
Wayne Circuit Court
LC No. 12-006993-NI

Before: SHAPIRO, P.J., and O'CONNELL and GLEICHER, JJ.

GLEICHER, J. (*concurring*).

I concur with the result reached by the majority but write separately to offer an alternate legal analysis.

In insurance coverage disputes, dates matter. In this case, the pertinent dates establish that Bristol West extended the policy period of Sandra Jean Owen's no-fault coverage until the day *after* the accident. On this basis, I concur with the majority that Bristol West must afford Owen personal injury protection benefits.

Owen's original no-fault insurance policy stated a policy period of September 9, 2011 through March 8, 2012. In February 2012, defendant Bristol West offered Owen a renewal policy with a term of March 9, 2012 through February 8, 2012. The cover letter for the renewal policy stated in relevant part:

> You are currently enrolled in our Direct Debit (EFT) payment plan, which also applies to this renewal. For your convenience, the amount due for your next renewal down payment will be automatically deducted from your bank account. Please refer to the next page for your payment schedule. It includes the due dates and amounts of future withdrawals from your account.

-1-

The "payment schedule" offered by Bristol West indicates that Owen's first payment would be due on March 8, 2012, and that the payment method was "Automatic." Bristol West further provided in this form: "Funds will be debited from your bank account **on or after** the payment due date. The debit will appear on your bank statement as 'BRISTOL WEST INS'. Please be sure there are sufficient funds in your account." (Emphasis added.) Underneath that notification, the Bristol West renewal form informed Owens that the amount charged for each installment payment "includes an EFT installment fee of $5.00." In other words, Bristol West collected an extra $5.00 for each payment made electronically. The following is the "payment schedule" offered by Bristol West:

| Installment Number | Due Date * | Payment Amount ** | Payment Method |
|---|---|---|---|
| Current | 03/08/12 | $288.07 | Automatic |
| 02 | 04/09/12 | $287.40 | Automatic |
| 03 | 05/09/12 | $287.40 | Automatic |
| 04 | 06/09/12 | $287.40 | Automatic |
| 05 | 07/09/12 | $287.40 | Automatic |
| 06 | 08/09/12 | $287.43 | Automatic |

* Funds will be debited from your bank account on or after the payment due date. The debit will appear on your bank statement as "BRISTOL WEST INS". Please be sure there are sufficient funds in your account.

** The payment amount for each installment includes an EFT installment fee of $5.00. If your outstanding policy balance is paid in full prior to the next payment due date, no EFT installment fees will be charged for the remainder of the policy term.

Bristol West set up the automatic payment plan through Owen's bank. Bristol West determined the dates that the withdrawals would be made. Bristol West directed Owen's bank when to debit Owen's account. Owen played no part in determining the dates of the automatic debits; that decision was Bristol West's and Bristol West's alone. Once Owen authorized Bristol West to debit her account, Bristol West initiated the debits electronically and controlled their timing. See 12 CFR § 1005.3 (providing a basic description of electronic fund transfers).

Owen's no-fault policy was set to expire on March 8, 2012. According to Bristol West, the renewal policy would commence on March 9, 2012. By its terms, Bristol West's renewal offer required Owen's consent to electronically debit premium payments "**on or after** the payment due date[s]" (emphasis added) identified on the Bristol West form. Owen could accept the renewal offer by having the necessary funds in her account to pay the amount that Bristol West sought to debit for the first premium payment.[1]

But Owen's acceptance necessarily had to occur on the date that Bristol West selected for the electronic debit. Bristol West did not condition acceptance of the renewal policy on its receipt of a mailed or hand-delivered premium payment on or before March 9; rather, Bristol West represented that it would accept payment for the renewal policy electronically, on a date to

---

[1] In this regard, I respectfully disagree with my colleagues. I believe that the renewal materials mailed to Owen did constitute an offer to renew. "Generally, delivery of a renewal policy by the insurer to the insured upon the expiration of a policy without request by the insured is an offer or proposal to affect a contract of insurance." 2 Couch, Insurance, 3d, § 29:17.

be chosen by Bristol West on or after March 8. In other words, Bristol West was in the driver's seat as to *when* Owen could electronically accept its renewal offer. The only method for acceptance of Bristol West's renewal offer was through a successful electronic transfer of funds on a date selected solely by Bristol West.

Bristol West did not attempt to debit Owen's account until March 12, 2012, and on that date the account lacked sufficient funds. I agree with Bristol West that the failure of the attempted electronic transaction on March 12 means that Owen rejected Bristol West's offer for renewal coverage. The only way that Owen could have accepted that offer was to have maintained adequate funds in her account to cover the March 12, 2012 electronic debit. And she failed to do so.

But the accident that gives rise to this case occurred on March 11, 2012—one day *before* Bristol West actually sought Owen's acceptance of its renewal offer. Owen could not have accepted or rejected Bristol West's renewal offer until March 12. In the meantime, she was involved in an accident and sustained personal injuries.

I would hold that Bristol West is equitably estopped from denying coverage for the March 11 accident because it failed to seek Owen's acceptance of the renewal offer until March 12. In that interim, Bristol West extended the previous term of coverage by implication. The Supreme Court applied the same reasoning in *Morales v Auto-Owners Ins Co*, 458 Mich 288, 298; 582 NW2d 776 (1998), to extend an insurer's liability based on the insurer's course of conduct, which "induced in the mind of the insured an honest belief that the terms and conditions of the policy . . . [would] not be enforced[.]" (Quotation marks and citation omitted, first brackets in original.) The Supreme Court explained:

> The principle of estoppel is an equitable defense that prevents one party to a contract from enforcing a specific provision contained in the contract. With regard to payment provisions of an insurance policy, it is generally recognized that "[b]ecause provisions for forfeiture, lapse, or suspension for nonpayment of premiums, assessments, or dues are for the benefit of the insurer, the insurer may waive, or may be estopped to assert, such a provision through its conduct or words." 5 Couch, Insurance, 3d, § 78:1, p 78–5. Moreover, "[u]nder certain circumstances the insurer may be estopped from asserting that the policy had expired and that it had not been renewed." 2 Couch, Insurance, 3d, § 29:45, p 29–54. [*Id*. at 295-296.]

Equitable estoppel applies if (1) the defendant's acts induced the plaintiff "to believe that the policy was in effect at the time of the accident," (2) "the plaintiff justifiably relied on this belief," and (3) the plaintiff suffered prejudice as a result of her belief that the policy remained in effect. *Id*. at 296-297. Bristol West is estopped from enforcing the termination date of Owen's original policy (March 8, 2012) because Bristol West did not attempt to initiate continuation coverage under the offered renewal policy until March 12, 2012. This inaction induced Owen to believe that between March 8 and 12, her original policy remained in effect. To hold otherwise would mean that Owen's no-fault coverage lapsed during the three days before Owen was required to accept the renewal coverage, rendering her "bare" for no-fault insurance purposes through no fault of her own. And "[i]t is elementary that the law abhors forfeitures and will

avoid them whenever reasonable ground can be found for so doing." *Staffan v Cigarmakers' Int'l Union of America*, 204 Mich 1, 7; 169 NW 876 (1918).

Considered from another angle, Bristol West's attempt to collect the *renewal* premium on March 12 serves as an acknowledgment that the previous policy remained in effect. Owen was either covered or she was not on March 11. Because "[r]ights under an insurance policy become fixed as of the date of the accident," *Cason v Auto Owners Ins Co*, 181 Mich App 600, 609; 450 NW2d 6 (1989), Owen's March 12 failure to accept the renewal policy offer did not void her coverage on March 11.

On these legal grounds, I join the majority opinion.


/s/ Elizabeth L. Gleicher

-4-